BUSINESS BROKERS ASSOCIATION, INC., and others, Plaintiffs, vs. McCAULEY, District Attorney, and others, Respondents : ZASTROW and another, Appellants.

*May 2—June 7, 1949.*

6

8

The cause was submitted for the appellants on the brief of *George A. Burns* of Milwaukee, and for the respondents on the brief of the *Attorney General, Stewart G. Honeck,* deputy attorney general, and *Henry Wozniak,* assistant district attorney of Milwaukee county.

FAIRCHILD, J.   If the statute in question is unconstitutional, the plaintiffs are entitled to the relief they seek.   In *Olson v. State Conservation Comm.* 235 Wis. 473, 478, 293 N. W. 262, this court said: "Courts unquestionably have the power to enjoin state officials from enforcing statutes which contravene the constitution.   *John F. Jelke Co. v. Beck,* 208 Wis. 650, 661, 242 N. W. 576."   See also *Williams v. Hudson,* 219 Wis. 119, 262 N. W. 607 (city officials enjoined from enforcing an unconstitutional city ordinance) ; *Bonnett*

*v. Vallier,* 136 Wis. 193, 116 N. W. 885 (injunction against enforcement by state officials of building statute on ground that the statute was unconstitutional).

It is conceded that a "business-opportunity broker" is a proper subject for regulation under the police power. Plaintiffs object to the classification because certain persons and corporations are exempt from the provisions of the statute. On this appeal they confine their attack to the exemption of real-estate brokers.

The rule is that ". . . in the exercise of its police power to require licenses, a state may make any reasonable classification which it deems necessary to the police purpose intended to be attained by the legislation." 33 Am. Jur., Licenses, p. 353, sec. 30. ". . . the legislature may, without denial of equal protection of the laws, classify businesses and occupations for purposes of regulation, provide different rules for different classes, limit a regulation to a particular kind of business, extend to some persons privileges denied to others, or impose restrictions on some but not on others, where the classification or discrimination is based on real differences in the subject matter and is reasonable, and the legislation affects alike all persons pursuing the same business under the same conditions." 16 C. J. S., Constitutional Law, p. 1013, sec. 510.

Furthermore the discretion of the legislature in making these classifications is great. As was said in *State v. Neveau,* 237 Wis. 85, 99, 294 N. W. 796, 296 N. W. 622: "We are not required under the law to find a proper basis of classification, but the classification made by the legislature is presumed to be valid unless the court can say that no state of facts can reasonably be conceived that would sustain it. All reasonable doubts must be resolved in favor of the legislative classification." See also *Servonitz v. State,* 133 Wis. 231, 113 N. W. 277; *State v. Wetzel,* 208 Wis. 603, 243 N. W. 768.

In *State ex rel. Ford Hopkins Co. v. Mayor,* 226 Wis. 215, 222, 276 N. W. 311, this court reviewed the general rules applicable to classifications under the police power:

"(1) All classification must be based upon substantial distinctions which make one class really different from another.

"(2) The classification adopted must be germane to the purpose of the law.

"(3) The classification must not be based upon existing circumstances only.

"(4) To whatever class a law may apply, it must apply equally to each member thereof.

"*Johnson v. Milwaukee,* 88 Wis. 383, 390, 60 N. W. 270.

"In *State ex rel. Risch v. Trustees,* 121 Wis. 44, 54, 98 N. W. 954, 957, the same general rules are held essential for a constitutional classification, with the following addition to No. (3):

"'It must not be so constituted as to preclude addition to the numbers included within a class.'

"And by adding a fifth rule, as follows:

"'(5) That the characteristics of each class should be so far different from those of other classes as to reasonably suggest at least the propriety, having regard to the public good, of substantially different legislation.'" See also *State v. Potokar,* 245 Wis. 460, 15 N. W. (2d) 158.

The business of a business-opportunity broker is sufficiently distinct from other businesses to warrant the legislative classification. The business-opportunity broker deals in the sale of businesses. His field in its nature differs from others and its characteristics are distinct from those of the real-estate broker, for example: Because of his limited field he feels his compensation should be higher. When he makes a sale, he gets compensation only on the fixtures and good will of the business. There is some significance attached to the term "business opportunity." These are some of the reasons which the legislature might have had in mind in regulating business-opportunity brokers in a class by themselves.

The act so obviously fulfils the other requirements set out in *State ex rel. Ford Hopkins Co. v. Mayor, supra,* that there is no need to discuss any except (2) which is, "The classification adopted must be germane to the purpose of the law."

The purpose of the statute in question was to regulate business-opportunity brokers who previously had not been regulated. It appears that all persons and corporations exempted under the terms of the Business Opportunity Brokers' Statute are regulated by some other provision of the statutes relating to their particular class. As pointed out in the trial court's opinion: "Banks and the transaction of banking business is regulated by chs. 220, 221, and 222, Stats.; trust companies by ch. 223, Stats.; building and loan associations by ch. 215, Stats.; loan companies by ch. 214 and secs. 216.01 and 115.09, Stats., and real-estate brokers by ch. 136, secs. 136.01—136.18. As respects land-mortgage or farm-loan associations, organized under the laws of this state, or of the United States, 'no associations' are authorized or exist under the laws of Wisconsin except those enumerated and which are subject to regulation under one of the provisions above cited. Those organized under federal statutes are *public* corporations, under the control of the federal government, and do not affect the business broker." Manifestly the legislative intent was to exclude those businesses which were different and which were already regulated.

Plaintiffs rely on *State ex rel. Kempinger v. Whyte,* 177 Wis. 541, 188 N. W. 607, and *In re Raleigh,* 177 Cal. 746, 171 Pac. 950. The *Kempinger Case* is clearly not in point. That case involved a statute which the court interpreted as requiring an undertaker to obtain an embalmer's license as a condition to conducting his business. Since undertaking and embalming are two distinct businesses, the court held that this could not be done.

In *In re Raleigh* the statute set up certain requirements for persons engaging in the real-estate business but exempted in-

surance agents, companies, etc., from the provisions of the act. However, it appears that the standards for a real-estate license and for an insurance license were substantially different. The California court states (p. 749) :

"When the laws relating to the procurement of licenses of insurance companies, agents, or brokers are consulted, it is found that their requirements for the obtaining of licenses from the insurance commissioner are much more simple and far less burdensome than those which, by the terms of the act in question, are imposed upon real-estate brokers and salesmen. Had these burdens been equal or in any degree equivalent, had the safeguards cast about the business of insurance agents or brokers to insure honesty of character and fair dealing in business been the same as or similar to those which this act requires of real-estate brokers or salesmen, it might well be argued that the possession by a corporation, firm, or individual of a license to engage in any form or department of the insurance business would suffice as an acceptable substitute for the license, bond, recommendations, and other safeguards provided for in the real-estate agent's act."

It appears that the quotation from the opinion of the California court not only distinguishes that case from the one before us but also indicates an important difference and is authority for holding that under our statutory setup the exemption of real-estate brokers from the provisions of the Business Opportunity Brokers' Act is not an unconstitutional classification. The requirements set up in sec. 136.22 (2), Stats., for a license as a business-opportunity broker and those in sec. 136.05 (2), for a license as a real-estate broker are similar so far as qualifications are concerned in that the real-estate broker and the business-opportunity broker are required to have a fair knowledge of the English language, a fair understanding of the legal instruments with which they deal and of the statutory provisions affecting their field of activity.

However, plaintiffs contend that the exemption of real-estate brokers from the requirements of the Business Oppor-

tunity Brokers' Act discriminates against the latter because it allows the real-estate brokers to engage generally in the sale of businesses without a business-opportunity broker's license but does not allow business-opportunity brokers the same privilege as to real-estate sales. That is definitely a twisting of the legislative intent. The exclusions in sec. 136.19 (3), Stats., do not permit the real-estate broker to invade the territory set apart as that of a business-opportunity broker. True, a piece of real estate may include a store building, but the broker in selling the property is acting in his capacity as a real-estate broker. "Classification is not to be condemned because there may be occasional instances in which it does not fit the situation; it is proper if the great mass of situations to which the law applies justify the formation of a class and the application of some special or different legislative provisions to that class." *Peterson v. Widule,* 157 Wis. 641, 648, 147 N. W. 966. The line of demarcation between the business of a real-estate broker and of a business-opportunity broker is so distinct that if a real-estate broker wished to engage generally in the selling of businesses he would have to obtain a license for that particular purpose.

It is considered that secs. 136.19 to 136.36, Stats,, inclusive, are constitutional.

*By the Court.*—Judgment affirmed.

BROADFOOT, J., took no part.