GOTTLIEB and others, Appellants, v. CITY OF MILWAUKEE, Respondent.

*October 31, 1966—January 10, 1967.*

410

412

For the appellants there were briefs by *Frinzi, Catania, Neubecker & Styler* and *Nicholas C. Catania,* all of Milwaukee, and oral argument by *Nicholas C. Catania.*

For the respondent there were briefs by *John J. Fleming,* city attorney, and *Harry G. Slater,* deputy city attorney, and oral argument by *Mr. Slater.*

Pursuant to sec. 269.56 (11), Stats., a brief was filed by *Bronson C. La Follette,* attorney general, *Arlen C. Christenson,* deputy attorney general, with *Harold H. Persons,* assistant attorney general, of counsel.

A brief *amici curiae* was filed by *Goldberg, Previant & Uelmen* of Milwaukee, for the Wisconsin State AFL–CIO,

Milwaukee County Labor Council, and the Milwaukee Building and Construction Trades Council.

A brief *amicus curiae* was filed by *Julian Bradbury* of Madison, for the League of Wisconsin Municipalities.

A brief *amicus curiae* was filed by *Brady, Tyrrell & Bruce,* attorneys, and *Richard W. Cutler* and *John S. Sammond* of counsel, all of Milwaukee, for the Time Insurance Company.

Briefs *amicus curiae* were filed by *Kaumheimer, Reinhart, Boerner, Van Deuren & Norris,* attorneys, and *Richard H. Norris III* of counsel, all of Milwaukee, for the Wisconsin Clybourn Urban Redevelopment Corporation.

Briefs *amicus curiae* were filed by *Quarles, Herriott & Clemons,* attorneys, and *Richard R. Teschner, Dale L. Sorden,* and *Robert H. Diaz, Jr.,* of counsel, all of Milwaukee, for the City Hall Square Redevelopment Corporation.

HEFFERNAN, J. This court takes the position that the constitutionality of a statute may be raised by a general demurrer when the complaint alleges that the statute upon which the defendant bases his conduct is unconstitutional (*Bonnett v. Vallier* (1908), 136 Wis. 193, 116 N. W. 885; *State ex rel. Week v. State Board of Examiners* (1947), 252 Wis. 32, 34, 30 N. W. (2d) 187), or when the demurring defendant contends that the plaintiff grounds his cause of action on an unconstitutional statute (*State v. Texaco* (1961), 14 Wis. (2d) 625, 631, 111 N. W. (2d) 918; *Ocean Accident & Guarantee Corp. v. Poulsen* (1943), 244 Wis. 286, 12 N. W. (2d) 129).

When a case comes before the court on an appeal sustaining a demurrer, the facts set forth in the complaint must be accepted as true. *Brown Deer v. Milwaukee* (1956), 274 Wis. 50, 58, 79 N. W. (2d) 340. Hence, by demurring, the city of Milwaukee has conceded, for the purpose of this portion of the action, the truth of the

factual assertions set forth in the plaintiffs' complaint. It has chosen only to contest the legal premises upon which the plaintiffs ask for relief.

When a case comes to a court in this posture, the complaint must be liberally construed to state a cause of action if it is at all possible to do so. *Schlicht v. Thesing* (1964), 25 Wis. (2d) 436, 441, 130 N. W. (2d) 763; *Walley v. Patake* (1956), 271 Wis. 530, 74 N. W. (2d) 130. We have said:

". . . every reasonable intendment and presumption is to be made in favor of the complaint and the plaintiff is entitled to all reasonable inferences which can be drawn from the facts pleaded." *Conrad v. Evans* (1955), 269 Wis. 387, 390, 69 N. W. (2d) 478.

On the other hand, it is a legislative enactment that is attacked as being unconstitutional, and the cardinal rule of statutory construction is to preserve a statute and to find it constitutional if it is at all possible to do so. We have recently said:

". . . the duty of this court is . . . if possible, to so construe the statute as to find it in harmony with accepted constitutional principles." *State ex rel. Harvey v. Morgan* (1966), 30 Wis. (2d) 1, 13, 139 N. W. (2d) 585.

All legislative acts are presumed constitutional, and every presumption must be indulged to sustain the law if at all possible. *State ex rel. McCormack v. Foley* (1962), 18 Wis. (2d) 274, 279, 118 N. W. (2d) 211; *School Dist. v. Marine Nat. Exchange Bank* (1960), 9 Wis. (2d) 400, 403, 101 N. W. (2d) 112. If any doubt exists it must be resolved in favor of the constitutionality of a statute. *State ex rel. Thomson v. Giessel* (1953), 265 Wis. 558, 564, 61 N. W. (2d) 903. We as a court are not concerned with the merits of the legislation under attack. We are not concerned with the wisdom of what the legislature has done. We are judicially concerned only when the statute clearly contravenes some constitu-

tional provision. *Chicago & N. W. R. Co. v. La Follette* (1965), 27 Wis. (2d) 505, 521, 135 N. W. (2d) 269.

This challenge to the Urban Redevelopment Law comes to us on a complaint asking for a declaratory judgment, seeking not only a declaration in regard to the constitutionality of the statute, but, in addition, for an injunction against further conduct under the statute. To obtain such a declaration there must be a showing of a justiciable controversy between persons whose interests are adverse, and the plaintiff must have a legally protectible interest in a controversy that is ripe for judicial determination (see Borchard, Declaratory Judgments, pp. 26–57). *State ex rel. La Follette v. Dammann* (1936), 220 Wis. 17, 22, 264 N. W. 627, 103 A. L. R. 1089. The trial court made specific findings that the plaintiffs had a substantial interest in the controversy as taxpayers of the city of Milwaukee and that they were proper parties to bring the action for a declaratory judgment. This finding was not challenged on appeal, and at oral argument counsel for the respondent city conceded that plaintiffs had proper standing to sue. Accordingly, that question is not before the court.

*Standards of tax uniformity required by sec. 1, art. VIII of the Wisconsin constitution.*

The language of the constitution relevant to this question is simple:

"The rule of taxation shall be uniform . . . . Taxes shall be levied upon such property . . . as the legislature shall prescribe." [1]

---

[1] Sec. 1, art. VIII, of the Wisconsin constitution, in its entirety, reads as follows:

"**Rule of taxation uniform; income, privilege and occupation taxes.** SECTION 1. The rule of taxation shall be uniform but the legislature may empower cities, villages or towns to collect and return taxes on real estate located therein by optional methods. Taxes shall be levied upon such property with such classifications

Nonetheless, this provision of the constitution has been the subject of litigation for well over one hundred years. The Wisconsin Reports show that more than 40 cases have been concerned with the interpretation of this portion of art. VIII. In 1906 Mr. Justice MARSHALL in *Chicago & N. W. R. Co. v. State,* 128 Wis. 553, 587, 108 N. W. 557, sought to dispel for all time any doubts as to its meaning. He stated:

"It seems quite unaccountable, after the lapse of nearly sixty years since the constitution was framed, and half a century since that feature of the article in question was first considered by this court, notwithstanding the seemingly clear decision then made on the point at that time primarily involved, followed soon thereafter by a second decision covering the precise matter now in hand, that we should find ourselves at this late day face to face with a controversy as to the precise meaning of the words of our organic law: 'The rule of taxation shall be uniform, and taxes shall be levied on such property as the legislature shall prescribe.' That language seems plain, this court, as we shall see, early said it was very plain, and yet it has been treated time and again as ambiguous, and still seems to be so regarded, notwithstanding all that this court has in fifty years said on the subject. And so it must be regarded, especially since men of the highest attainments, lawyers, jurists, and learned laymen, have read different meanings out of it, having regard, as it has been thought, to the object of state constitutions and the broad powers possessed by the people, unrestrained by a charter on the subject. No better object-lesson, perhaps, could well be presented to illustrate the rule

as to forests and minerals including or separate or severed from the land, as the legislature shall prescribe. Taxation of merchants' stock-in-trade, manufacturers' materials and finished products, and livestock need not be uniform with the taxation of real property and other personal property, but the taxation of all such merchants' stock-in-trade, manufacturers' materials and finished products and livestock shall be uniform, except that the legislature may provide that the value thereof shall be determined on an average basis. Taxes may also be imposed on incomes, privileges and occupations, which taxes may be graduated and progressive, and reasonable exemptions may be provided."

that ambiguity requiring judicial construction may as well arise through the apparent consequences of applying words in their literal sense to the subject with which they deal as from uncertainty of sense in the words themselves, than by the matter in hand. By such application, especially in the light of the varying views entertained of what this court has decided, the words of the constitution speak one way, seemingly, to some and another way to others. It is to be hoped that by the treatment of the subject in the three cases now before us all obscurities may be cleared up."

In view of the approximately 20 cases on the same subject that have come before the court since Mr. Justice MARSHALL wrote, it is apparent that his hopes have not been realized. In view of past experience, this court does not have the temerity to assume that this case will lay to rest all future uncertainties concerning the meaning of sec. 1, art. VIII of the constitution. We do hope, however, to restate what we deem to be the uniform holding of this court almost from its very inception, and in so doing determine the question presently before us.

We adhere to the rule of *Knowlton v. Supervisors of Rock County* (1859), 9 Wis. 378 (\*410). This case is over one hundred years old and is, for all practical purposes, the seminal case interpreting that portion of the constitution. Its current viability is shown by the fact that we have found it applicable and quoted it with approval in cases decided within the last two terms of court. *Ehrlich v. Racine* (1965), 26 Wis. (2d) 352, 132 N. W. (2d) 489, and *Plymouth v. Elsner* (1965), 28 Wis. (2d) 102, 135 N. W. (2d) 799.

The *Knowlton Case* involved a statute which provided that rural property within the limits of the city of Janesville was not to be subject to an annual city tax exceeding one half that levied upon other property in the city. The court held that this tax differential violated the uniformity clause of the constitution and held that the 50 percent exemption was invalid. The supreme court therein re-

jected the theory that partial exemptions were permissible, and dismissed as untenable the contention that the legislature could classify property to be taxed at different rates so long as there was uniformity within the class. In *Knowlton* the court held that once property is selected for taxation it must be taxed in its entirety and the same rate must be applied to it as to all property in the tax district.

The court stated therein, at page 388 (*420) :

". . . when property is the object of taxation, it should all alike, in proportion to its value, contribute towards paying the expense of such benefits and protection. These are plain and obvious propositions of equity and justice, sustained as we believe by the very letter and spirit of the constitution. Its mandate, it is true, is very brief, but long enough for all practical purposes; long enough to embrace within it clearly and concisely the doctrine which the framers intended to establish, viz: that of equality. 'The rule of taxation shall be uniform,' that is to say, the course or mode of proceeding in levying or laying taxes shall be uniform; it shall in all cases be alike. The act of laying a tax on property consists of several distinct steps, such as the assessment or fixing of its value, the establishing of the rate, etc.; and in order to have the rule or course of proceeding uniform, each step taken must be uniform. The valuation must be uniform, the rate must be uniform. Thus uniformity in such a proceeding becomes equality; and there can be no uniform rule which is not at the same time an equal rule, operating alike upon all the taxable property throughout the territorial limits of the state, municipality or local subdivision of the government, within and for which the tax is to be raised."

In *Knowlton* the court was confronted with the argument that the uniformity requirement would be satisfied if there were uniformity within a proper class and that, since all rural property was taxed at one half and all other property (in a proper and different class) at the full rate, there was uniformity. The court said, *supra,* page 390 (*421) :

"The answer to this argument is, that it creates different *rules* of taxation to the number of which there is no limit, except that fixed by legislative discretion, whilst the constitution establishes but one fixed, unbending, uniform rule upon the subject."

It was conceded in *Knowlton,* and the proposition has never been seriously challenged, that the phrase, "as the legislature shall prescribe," confers upon the legislature the right to select some property for taxation and to totally omit or exempt others. From this it was argued, *Knowlton, supra,* page 391 (*423), that:

". . . if they have the right to wholly exempt, they can do so partially, by saying that it shall pay a certain portion of the taxes, or that it shall be taxed at a certain rate lower than other taxable property . . . ."

To that, the court in *Knowlton, supra,* page 392 (*424), stated:

". . . we think this argument must fail; for the very moment that the legislature say that a specific article or kind of property shall be taxed, or shall contribute at all towards the expense of government, from that very moment the first clause of the section takes effect, and it must be taxed by the uniform rule. The legislature can only 'prescribe,' and when they have done that, the first clause of the section governs the residue of the proceeding. There cannot be any medium ground between absolute exemption and uniform taxation."

The pronouncements of this court in *Knowlton* have been followed undeviatingly by this court since 1859 in all cases involving the general property tax. Counsel for the respondent and briefs of *amici curiae* have called our attention to the series of cases commencing with the unreported 1855 case of *Milwaukee & Mississippi R. Co. v. Board of Supervisors of the County of Waukesha,* referred to in a footnote to *Knowlton, supra,* page 399 (*431), and culminating in the rehearing of *Kneeland v. Milwaukee* (1862), 15 Wis. 497 (*454). They concluded that the *Knowlton Case* was thereby overruled. However,

these cases are all concerned with the constitutionality of a gross receipts tax upon the operation of railroads. They are not concerned with general property taxes. The *Waukesha County Case, supra,* though unreported, concededly approved the gross receipts tax upon railroads. Subsequently, after *Knowlton,* and relying upon *Knowlton,* the court in *State ex rel. Attorney General v. Winnebago Lake & Fox River Plankroad Co.* (1860), 11 Wis. 34 (*35), held the gross receipts tax unconstitutional as a violation of the uniformity rule enunciated in *Knowlton.* Thereafter, a similar question affecting the taxation of railroads came before the court in 1862 in the *Kneeland Case, supra.* The first decision in that case followed *Knowlton* and *Winnebago,* holding that the railroad gross receipts tax was invalid. Upon rehearing, however, counsel persuaded the court that, in reliance upon the unreported *Waukesha County Case,* the gross receipts tax had become a proper revenue source throughout the state and that a holding of unconstitutionality seven years later would raise havoc with almost all government financial transactions, upset the validity of tax deeds, and would in general have catastrophic consequences throughout the state. The court in *Kneeland, supra,* page 519 (*474), speaking through Mr. Justice PAINE, reversed itself upon the *stare decisis* rationale, conceding that the *Waukesha Case:*

". . . sustained the law of 1854, and we know that all the taxation of the state and all the private transactions growing out of it, have since been conducted on the theory of its validity. Upon this ground alone is that decision entitled to be regarded as an authority . . . ."

This case overruled the *Winnebago Plankroad Case* that quoted *Knowlton* with approval. We conclude, however, *Knowlton* was not thereby overruled, modified, or discredited. Both Mr. Chief Justice DIXON and Mr. Justice PAINE make it clear that the reversion to *Waukesha* is on the basis of precedent alone and not on the

merits of the controversy. Both also indicated a desire to limit the effect of the *Kneeland* decision to the matter then under consideration—the taxing of gross receipts of railroads and plankroads. Mr. Chief Justice DIXON, *supra,* page 515 (*470), stated:

"If we were binding the people or the legislature to an unequal and unjust rule of taxation hereafter, the question would be of far greater moment. But we are not."

Mr. Justice PAINE stated, *supra,* page 518 (*473), referring to the 1855 *Waukesha* decision:

". . . I sincerely regret that a decision which I am compelled to regard as a subversion of an important safeguard of the constitution, was ever made, yet . . . in obedience to the rule of judicial order, I feel it my duty to return to, and follow, though I cannot defend it.
"It may be . . . that this will not necessarily lead to the recognition of the same principle in new legislation upon other subjects—that it may be held binding, so far as it actually decided, but not held as establishing a principle to be applied to new cases."

It is apparent the effect of *Kneeland* was so limited. After the mandate in *Kneeland,* the court, upon petition, was asked to consider whether the rule of *Kneeland,* which sanctioned nonuniformity in the taxation of railroads, affected the decision in *Knowlton.* The court held it did not and said in a second *Knowlton Case* in respect to *Kneeland:*

". . . we shall follow that decision no further than the exact point decided, that is, to sustain the validity of the act of 1854 taxing rail or plankroads." *Knowlton v. Supervisors of Rock County* (1862), 15 Wis. 664, 665 (*600, *601).

In 1881, the court decided *Wisconsin C. R. Co. v. Taylor County,* 52 Wis. 37, 8 N. W. 833. The only question before the court was the validity of a statute exempting from taxation certain property obtained in trust from the United States for the purpose of railroad construction.

Mr. Justice CASSODAY, however, reviewed the whole question of gross receipts taxation and expressly upheld the 1855 *Waukesha Case* not only on *stare decisis,* as was done in *Kneeland,* but on the basis of its reasoning. It should be noted, however, that he quotes, *supra,* page 66, the trial judge in the *Waukesha Case* as stating in his opinion, " 'But I regard the payment to the state, not as a tax, but as a *bonus* or compensation for the exemption granted.' " While the argument continued to rage as to whether the imposition in *Waukesha* was a property tax or an "in lieu of tax" arrangement, it appears that this point raised by Mr. Justice CASSODAY puts into question the entire Cassoday rationale in regard to the 1855 *Waukesha Case.* If it was an "in lieu" arrangement, it was not a tax and, hence, not subject to the uniformity rule at all. Moreover, Mr. Justice CASSODAY'S entire discussion of the *Waukesha Case* is dicta since the discussion is not relevant to the determination of the case.

While an analysis of the cases from 1855 to 1906 shows that it was never an intent to expressly overrule *Knowlton,* there were nevertheless inconsistent statements, generally by way of dicta, that undermined the rule of that case.

In 1906, Mr. Justice MARSHALL took note of the inconsistencies that had appeared in respect to the requirement of uniformity in property taxation. He pointed out that the railroad gross receipts cases involved privilege taxes and were not tax cases in the usual sense and whatever the court had said about the railroad privilege taxes was not applicable to property taxes.

The 1906 case, moreover, specifically restated the rule of *Knowlton* and left no doubt that it considered it to be the case that expressed the court's interpretation of the uniformity rule.

Mr. Justice MARSHALL in *Chicago & N. W. R. Co. v. State* (1906), 128 Wis. 553, 108 N. W. 557, discussed the cases that had been decided under sec. 1, art. VIII of the

constitution. From his exposition of the subject, the following principles, to which we subscribe, may be derived:

1. For direct taxation of property, under the uniformity rule there can be but one constitutional class.

2. All within that class must be taxed on a basis of equality so far as practicable and all property taxed must bear its burden equally on an *ad valorem* basis.

3. All property not included in that class must be absolutely exempt from property taxation.

4. Privilege taxes are not direct taxes on property and are not subject to the uniformity rule.

5. While there can be no classification of property for different rules or rates of property taxation, the legislature can classify as between property that is to be taxed and that which is to be wholly exempt, and the test of such classification is reasonableness.

6. There can be variations in the mechanics of property assessment or tax imposition so long as the resulting taxation shall be borne with as nearly as practicable equality on an *ad valorem* basis with other taxable property.

We conclude that these principles, distilled from the opinion of Mr. Justice MARSHALL, correctly state the present law. They have without equivocation governed the decisions of this court since the date of that opinion.

A series of recent cases shows our adherence to them. In *State ex rel. Baker Mfg. Co. v. Evansville* (1952), 261 Wis. 599, 53 N. W. (2d) 795, this court was confronted with a disparity in assessments in that all personal property was assessed at one ratio of true value while all real property was assessed at a different ratio. We pointed out, *supra,* page 609, that uniform treatment within a class did not satisfy the uniformity clause, and that there could be but one class of property for tax purposes, and when "once the true value is arrived at, each dollar's worth of one sort of property is liable for exactly the

same tax as a dollar's worth of any other sort of property . . . ."

In *Barnes v. West Allis* (1957), 275 Wis. 31, 81 N. W. (2d) 75, we stated that there can be no classification which interferes with substantial uniformity of rate based upon value.

In 1965, two cases came before us in which we reiterated the rule of *Knowlton v. Supervisors of Rock County, supra*. In *Ehrlich v. Racine* (1965), 26 Wis. (2d) 352, 132 N. W. (2d) 489, we discussed the legality of a contract whereby a subdivider and the city of Racine agreed that, in exchange for granting the city an easement over his property for storm-sewer purposes, for a period of ten years the city would rebate all taxes on the property resulting from an assessed valuation in excess of $500 per acre. We stated, *supra,* page 356:

"The legislature can, with uniformity, exempt property from taxes, but it cannot partially exempt particular property. 'There cannot be any medium ground between absolute exemption and uniform taxation,' said the court in *Knowlton v. Supervisors of Rock County* . . .

"In examining the contract . . . we conclude that it provides for a partial exemption from taxes of the plaintiffs' land."

In *Plymouth v. Elsner* (1965), 28 Wis. (2d) 102, 135 N. W. (2d) 799, we condemned an ordinance which required the same tax payment (to establish a city industrial development project) on properties irrespective of their assessed value. We cited with approval *Knowlton, supra,* and *Chicago & N. W. R. Co. v. State, supra,* and quoted the statement of Mr. Justice MARSHALL in the latter case, at page 108:

" 'For the direct method of taxing property, taxation on property so called, as to the rule of uniformity, there can be but one constitutional class. All not included therein must be absolutely exempt from such taxation. All within such class must be taxed on a basis of equality so far as practicable.' "

We held the imposition to be a property tax and violative of the constitutional rule of uniformity.

In 1966, in *State ex rel. Harvey v. Morgan*, 30 Wis. (2d) 1, 139 N. W. (2d) 585, we pointed out that a rebate of income taxes, or a payment from the general fund as a relief measure for the assistance of the needy aged, did not violate the uniformity rule, since the scheme was in no way hinged upon the ownership or taxation of property. The clear implication of the case is that a payment that would constitute a rebate of property taxes would be a partial exemption and therefore void.

The viability of the uniformity clause is attested to by the series of constitutional amendments that have been necessary to avoid its proscriptions. In 1908, sec. 1, art. VIII, was amended to permit income, privilege, and occupational taxes without regard to the uniformity clause. In 1927, it was amended to make possible the separate taxation of forests and minerals. In 1941, came an amendment that permitted municipalities to collect and return taxes on real estate by optional methods, and, in 1961, the inequality of taxing merchants' stock in trade and certain other personal property uniformly with general property was recognized, and the requirements of the section were lifted in respect to the types of property specified. Without question these amendments resulted from the recognition by the legislature and the people of the onerous strictures of the constitutional requirement of uniformity.

The rigors of the uniformity clause have on occasion prevented the passage of socially desirable legislation; and to accomplish the ends sought, constitutional amendments permitting limited and defined exceptions to the rule have been enacted and ratified. Its purpose, however, is as worthy as it is necessary. It is "to protect the citizen against unequal, and consequently unjust taxation." *Weeks v. Milwaukee* (1860), 10 Wis. 186, 201 (*242, *257).

*Do the tax freeze provisions of the Urban Redevelopment
Law violate the constitutional requirement
of uniformity?* [2]

It was argued in the trial court that all that is required
by the constitutional uniformity clause is that there be
a proper classification based upon substantial distinctions
and that there only need be equality or uniformity within
the class. This is an assumption that cannot be supported
in light of this court's consistent interpretation of the
uniformity provision. As we have recently said in *State
ex rel. Baker Mfg. Co. v. Evansville* (1952), 261 Wis.
599, 609, 53 N. W. (2d) 795:

". . . it contends . . . that the requirement of uni-
formity is satisfied so long as there is uniformity within
the class. We do not consider this to be the law."

We have also said that there can be but one class of
property subject to tax, and that all others must be
completely exempt. However, were this not a property
tax, the classification approved by the trial court on the
basis of reasonableness would be sufficient. We have held
that the rule of total exemption or total taxation is inap-
plicable to: The inheritance tax (*Nunnemacher v. State*
(1906), 129 Wis. 190, 108 N. W. 627; *Estate of Heuel*
(1958), 4 Wis. (2d) 400, 90 N. W. (2d) 634), "privi-
leges" tax (*Northwestern Mut. Life Ins. Co. v. State*
(1915), 163 Wis. 484, 155 N. W. 609, 158 N. W. 328),
license tax (*Business Brokers Asso. v. McCauley* (1949),

---

[2] While the plaintiff has alleged other bases for challenging the
constitutionality of the Urban Redevelopment Law, we find those
other challenges to be without merit. We conclude that the classi-
fication as to area size is not unreasonable, that the legislatively
established standards are sufficient for the guidance of the mu-
nicipality, that there is no violation of any rights protected by
the Fourteenth amendment to the constitution of the United States,
and that the legislation is fatally deficient only in respect to its
failure to comply with sec. 1, art. VIII of the constitution of
Wisconsin.

255 Wis. 5, 38 N. W. (2d) 8), income tax (*Appeal of Van Dyke* (1935), 217 Wis. 528, 259 N. W. 700), occupational tax (*State ex rel. Bernhard Stern & Sons v. Bodden* (1917), 165 Wis. 75, 160 N. W. 1077), excise taxes in general (*Beals v. State* (1909), 139 Wis. 544, 121 N. W. 347), or special improvement assessments (*Williams v. Madison* (1962), 15 Wis. (2d) 430, 113 N. W. (2d) 395).

For all of these there may be classifications, as well as partial exemptions. Uniformity in respect to exactions of this type merely means that there be equal treatment within a classification ". . . based on reasonable differences or distinctions which distinguish the members of a class from those of another in respects germane to some general and public purpose or object of the particular legislation." *Welch v. Henry* (1937), 223 Wis. 319, 323, 271 N. W. 68, 277 N. W. (2d) 183, 109 A. L. R. 508. This test is not appropriate in the instant case.

It is apparent from the face of the statute that in sec. 66.409, Stats., we are dealing with a direct property tax and not some other kind of exaction, license, or imposition. Sec. 66.409 (1) by its very terms:

". . . exempt[s] real property . . . from any increase in any local tax over the maximum local tax."

This legislation cannot, therefore, be upheld on the theory that it totally exempts both the basic property and the improvements thereon from the property tax and then "in lieu" thereof imposes an excise or privilege tax. This approach must be ruled out by the legislature's explicit definition in sec. 66.405 (3) (m), Stats., of "maximum local tax" as the "local tax on . . . real property." The statutory language reveals no intent to identify the payments on the basis of the frozen assessment as other than a reduced but direct tax on real property. The constitutionality must, accordingly, be tested by the standards applicable to property taxes.

A perusal of the statutes reveals that during the period of the freeze, which cannot exceed thirty years, the tax

on the property will be computed on a valuation that is determined by the assessed value just prior to its acquisition by the redevelopment corporation. For that length of time the owners are relieved of any tax based on an increment in value that might be attributable to the real estate itself and they are relieved of any tax that would result by virtue of an increase in value as the result of improvements or building on the property. Taxes are determined by valuation at the start of, or just prior to, the freeze period instead of by the application of the current assessed value each year as is required in respect to all other property. It is apparent that the property of the redevelopment corporation is subject to a portion of the property tax, but by a statutory concession it is not subject to all of the tax that would fall on other property of equal current value. It is partially exempt.

For reasons that the legislature considered sufficient, the property of the redevelopment corporation is given preferential treatment and bears less of its tax burden on the true *ad valorem* basis than does other property. This law accomplishes its intended, but constitutionally prohibited, purpose—the unequal taxation of property. Property taxes where such a freeze is in force are not uniform in their impact on property owners. Such lack of uniformity is accomplished by a prohibited partial exemption from taxation. While it may be conceded, as contended by respondent, that, if the law accomplishes its purpose, new building may be stimulated and the tax base broadened to the extent that at some time in the future other taxpayers not covered by the freeze might be benefited, nevertheless, the fact remains undisputed and undisputable that, if redevelopment corporations are assessed at a figure less than that which would be assigned to other taxpayers holding equally valuable property, other taxpayers will be paying a disproportionately higher share of local property taxes. This is not uniformity.

As another string to its bow, the respondent argues that, although the corporations are funded and managed by private capital, they are working to accomplish a public purpose; and as "public service corporations," they are not subject to the uniformity rule. This argument acknowledges that the corporations are granted a partial exemption, but that such exemption is justified as a *quid pro quo* for private capital being employed, at some risk, in the public service of slum clearance and urban renewal. It is apparent that the legislature did consider the fact that private capital, with the inducement of a tax freeze, might be able to accomplish the elimination of blight and slums and the renewal of downtown areas more quickly, and perhaps with less burden on the treasuries of local municipalities, than such improvements could be accomplished under the admittedly constitutional devices approved in *David Jeffrey Co. v. Milwaukee* (1954), 267 Wis. 559, 66 N. W. (2d) 362. However, we cannot accept this legislative declaration of policy approving the tax freeze in substitution and in derogation of the constitutional requirements of uniform taxation.[3] The portion of the statute in question must be judged not only as an urban renewal device but as a property tax statute, and it is in that respect that we find it constitutionally wanting. Moreover, it is an accepted tenet of our free enterprise system that the intelligent and enlightened management of private property is productive of general public good and prosperity, and it is not difficult to imagine that convincing arguments could be made for special tax privileges for all manner

[3] The briefs of the respondent and of *amici curiae* place great emphasis upon the strong public policy declarations of the legislature. Such declarations are persuasive that the classifications are reasonable and are based on real distinctions for the general public welfare. Such declarations aid in interpreting legislation so that the prohibitions of the Fourteenth amendment are not applicable. They, however, do not control where a constitutional provision prohibits all classification even if such classification would otherwise be reasonable.

of worthwhile private enterprise whose encouragement or assistance would contribute to the public welfare.

Under the terms of sec. 1, art. VIII of our constitution as it now exists and as it has been interpreted with consistency by this court, partial exemptions from taxation cannot be granted to urban redevelopment corporations.

Respondent city has also urged that we abandon our previous interpretation of the uniformity clause and that we reexamine long-standing precedent in view of changed present circumstances. The city attorney correctly points out that this court has in recent years abandoned precedents when it appeared that to adhere blindly to *stare decisis* would perpetuate doctrines that were no longer applicable to changed conditions and did not promote justice. Counsel cites the cases of *Holytz v. Milwaukee* (1962), 17 Wis. (2d) 26, 115 N. W. (2d) 618, in which we abandoned the doctrine of municipal immunity, and *Kojis v. Doctors Hospital* (1961), 12 Wis. (2d) 367, 107 N. W. (2d) 131, 107 N. W. (2d) 292, where we abandoned the doctrine of charitable immunity. However, counsel fails to note that in each of those cases the precedent abandoned was fashioned by the court itself and was neither statutory nor constitutional.

Moreover, we have made it clear that this court, in general, would depart from *stare decisis* only where unintentional conduct was involved and then only when there were compelling reasons for altering a *court-made* rule. *Estate of King* (1965), 28 Wis. (2d) 431, 137 N. W. (2d) 122. In *Wilcox v. Wilcox* (1965), 26 Wis. (2d) 617, 623, 133 N. W. (2d) 408, we pointed out our reluctance to deviate from precedent where rules of contract or property were involved. In the *Estate of King, supra,* page 436, we stated that we would not deviate from the interpretation of a tax statute in the absence of a change in the statute. We find the same reasoning compelling here. In view of the unbroken precedents developed over the years concerning the same unaltered

clause of the constitution, we cannot abandon *stare decisis* in this field of property taxation. We are governed not only by the logic of the previous opinions of the court in this respect but by the weight of precedent, from which we see no reason to deviate.

We therefore hold that that portion of the Urban Redevelopment Law which purports to limit assessments and grants to urban redevelopment corporations partial exemptions from assessment and taxation is unconstitutional, and conclude that the defendant city of Milwaukee should be restrained from all further proceedings or actions based upon said statutes or ordinances that may have been enacted under the authority of those sections of the statutes that have the effect of granting to any redevelopment corporation a partial exemption or assessment freeze.

We are informed by briefs of counsel that the common council has, pursuant to these statutes, heretofore granted tax exemptions to certain redevelopment corporations and that to make this ruling retroactive would create fiscal problems for the city of Milwaukee and to some degree impair the operations of those corporations which in good faith entered into the contracts contemplated by the Urban Redevelopment Law. We therefore make our mandate of unconstitutionality prospective only, to date on and after January 1, 1967, and conclude that all assessments made prior to that date, under the Urban Redevelopment Law, shall be deemed operative for the years in which made although they in fact grant partial exemptions from taxation, and taxes may be paid in 1967, but not beyond 1967, in accordance with such assessments. In all other respects the city of Milwaukee shall be enjoined from further implementation of the unconstitutional portions of the Urban Redevelopment Law, and all assessments of redevelopment corporation property made after January 1, 1967, shall be upon the same basis as all other property, even though redevelopment

contracts are presently in effect in regard to such property, and taxes and assessments on such property shall not hereafter be limited as contemplated by the Urban Redevelopment Law.

*By the Court.*—Judgment reversed. Sec. 66.409 (1) of the Wisconsin statutes is declared to be unconstitutional as violative of sec. 1, art. VIII of the Wisconsin constitution. The cause is remanded to the circuit court for Milwaukee county for further proceedings as prayed for in the plaintiffs' complaint as may be consistent with this opinion.

HANLEY, J., took no part.