EVERETT E. BOLLE, Director of Legislative Services, WisconsinState Assembly
At the request of the Assembly Organization Committee you have asked for my opinion on the constitutionality of a property tax exemption under the following two proposals:
 1. A proposal to exempt from all property taxation "homestead property" owned by Wisconsin residents.
 2. A proposal to exempt from property taxation that portion of property taxes levied for school purposes on "homestead property" owned by Wisconsin residents.
The term "homestead property" would include the dwelling used by the taxpayer as his principal residence and all attached farmland, and all attached nonfarmland not to exceed 40 acres.
The stated public purpose of these proposals is to enable Wisconsin citizens to retain ownership of their homesteads, which ownership is being threatened by the financial burdens imposed by such taxation.
Our first concern is whether the proposals fulfill a valid public purpose of a statewide concern. What constitutes a public purpose is in the first instance a question for the Legislature to determine. Although the supreme court will not be bound by legislative expressions of public purpose, it will give such expressions great weight and afford very wide discretion to legislative declarations of public purpose. State ex rel.Hammermill Paper Co. v. La Plante, 58 Wis.2d 32, 50,205 N.W.2d 784 (1973). *Page 338 
The public purpose here is to allow Wisconsin residents to retain home ownership, which allegedly is being threatened by burdens of high property taxation. The stated public purpose is suspect in the absence of any facts to support it, even though it enjoys the presumption. What indication is there that home ownership is being threatened because of property taxation? The high cost of new and existing dwellings may be a greater threat to persons desiring home ownership than property taxation. There may be some evidence that farm ownership is being threatened because of property tax burdens, but the proposals extend far beyond this concern. At any rate, if the stated purpose is not supported by the facts, its validity will not be upheld simply because the Legislature has so declared. No facts have been presented to justify the validity of the stated public purpose. Home ownership remains very popular in Wisconsin, even with the property tax burdens placed upon homesteads.
Further, assuming such a threat to home ownership exists, one must consider the alternative to home ownership, which is to rent a dwelling place. No matter how virtuous the benefits of home ownership may be, some persons prefer to rent property and others could not afford home ownership even if not subject to property taxation. The elimination of the property tax on homestead property would result in an onerous burden upon remaining property taxpayers. Those who could not afford to own homes would be paying higher rents increased by landlords who would have to make their tenants absorb the greater property taxes imposed upon their rental properties.
At this point the reasonableness of the classification must be considered. In the City of Madison the total property tax assessment for May 1, 1976, was $2,046,468,300. Of this total, $1,231,518,950 can be attributed to "residential" properties, which includes about 2500 vacant lots, about 4500 two-to-four unit apartment buildings, and about 30,000 single-family residences. Taking into account that this "residential" figure goes beyond the definition of "homestead property" as defined in the proposals, nevertheless, the impact of the proposals would appear to shift the burden of almost 50 percent of the total from "homestead property" owners to the others whose property would remain taxable.
There is concern as to whether both proposals would be declared to be in violation of the equal protection clause of the fourteenth *Page 339 
amendment to the Federal Constitution, and Wis. Const. art. I, sec. 1. This section of the Wisconsin Constitution is equivalent to the fourteenth amendment to the Federal Constitution. State exrel. Sonneborn v. Sylvester, 26 Wis.2d 43, 132 N.W.2d 249 (1965).
It must be observed that there is a strong presumption of constitutionality which would attach to a legislative enactment. Only if a classification is arbitrary and has no reasonable purpose or reflects no justifiable public policy will it be held violative of constitutional guarantees of equal protection Moreover, where a tax measure is involved, the presumption of constitutionality is strongest. Simanco, Inc. v. Department ofRevenue, 57 Wis.2d 47, 54-57, 203 N.W.2d 648 (1973).
The five standards necessary for a proper classification not violative of the equal protection clause are set forth inHortonville Ed. Asso. v. Joint Sch. Dist. No. 1, 66 Wis.2d 469,484, 225 N.W.2d 658 (1975), as follows:
 "`(1) All classifications must be based upon substantial distinctions which make one class really different from another.
 "`(2) The classifications adopted must be germane to the purpose of the law.
 "`(3) The classifications must not be based upon existing circumstances only. They must not be so constituted as to preclude additions to the numbers included within a class.
 "`(4) To whatever class a law may apply, it must apply equally to each member thereof.
 "`(5) The characteristics of each class should be so far different from those of other classes as to reasonably suggest at least the propriety, having regard to the public good, of substantially different legislation.' See also: Dane County v. McManus (1972), 55 Wis.2d 413, 423, 198 N.W.2d 667; State ex rel. Ford Hopkins Co. v. Mayor
(1937), 226 Wis. 215, 222, 276 N.W. 311."
However, in spite of these strong presumptions, a most serious problem remains as to whether Wisconsin residents owning "homestead property" represent a classification so separate and apart from other residents who do not own their principal dwelling places that the propriety of the classification can be upheld. *Page 340 
In State ex rel. Harvey v. Morgan, 30 Wis.2d 1, 139 N.W.2d 585
(1966), the supreme court upheld the constitutionality of a relief measure afforded to certain persons 65 years of age and over who owned or rented their homesteads. There was no opportunity in that case to attack the reasonableness of the classification for failure to treat owners and renters alike.
The proposals appear to meet three of the tests enumerated above. But, it is much more questionable whether the second and fifth tests can be met.
There are further distinctions in the definition of "homestead property" which should be considered. The term differentiates between "attached farmland" and "attached nonfarmland" by exempting all of the former and only up to 40 acres of the latter. In addition, some farmland would remain to be taxed if it were not "attached" to the dwelling or if the dwelling were occupied by a nonowner or by an owner who had a different principal residence.
Is there a reasonable basis for making these distinctions which is germane to the purpose of the law? Are the characteristics of each classification so different from other classes to reasonably suggest at least the propriety of substantially different legislation?
Any evidence of a need to preserve farmland cannot justify the classification per se. The proposals are not designed to simply preserve farmland. Any farmland which is not attached to the dwelling place of an owner who used that dwelling place as his principal residence would continue to be subject to taxation. Thus, the proposals have a more limited purpose. They are intended to encourage the retention of ownership of only that farmland which happens to be attached to a principle dwelling of a resident owner. The facts upon which to base the reasonableness of such a classification have not been presented. Why is it a matter of statewide concern that this limited classification is being threatened by the burdens of property taxation?
Since the proposals involve ad valorem taxation, the tax uniformity clause under Wis. Const. art. VIII, sec. 1, also should be considered.
This clause was recently amended in April, 1974, to permit the taxation of agricultural land on a different basis than the taxation of other real property. This proposal does not exempt all agricultural *Page 341 
land. It exempts only a certain kind of agricultural land, leaving the remaining agricultural land which would not qualify under the "homestead property" exemption as being subject to taxation. Although the uniformity clause now permits the taxation of agricultural land on a different basis, there is serious doubt as to whether it allows for nonuniformity of treatment within the classification for agricultural land. In other words, even though agricultural land does not have to be taxed on a uniform basis with nonagricultural land, nevertheless, all agricultural land must be taxed alike. As a class, all agricultural land could be exempt. These proposals, however, provide for the exemption of only a certain kind of agricultural land, not all agricultural land.
There is an excellent discussion of the test under the tax uniformity clause in the case of Gottlieb v. Milwaukee, 33 Wis.2d 408,147 N.W.2d 633 (1967). The supreme court adopted the following standards of tax uniformity at p. 424:
 "1. For direct taxation of property, under the uniformity rule there can be but one constitutional class.
 "2. All within that class must be taxed on a basis of equality so far as practicable and all property taxed must bear its burden equally on an ad valorem basis.
 "3. All property not included in that class must be absolutely exempt from property taxation.
 "4. Privilege taxes are not direct taxes on property and are not subject to the uniformity rule.
 "5. While there can be no classification of property for different rules or rates of property taxation, the legislature can classify as between property that is to be taxed and that which is to be wholly exempt, and the test of such classification is reasonableness.
 "6. There can be variations in the mechanics of property assessment or tax imposition so long as the resulting taxation shall be borne with as nearly as practicable equality on an ad valorem basis with other taxable property."
The amendment of Wis. Const. art. VIII, sec. 1, so as to allow the tax treatment of agricultural and undeveloped lands to differ from the tax treatment of other real property, was adopted in April, 1974, *Page 342 
after Gottlieb. With this exception, the Gottlieb standards still are applicable.
It appears that the proposals violate the requirements enumerated under items 2, 3 and 5 above.
Although I have discussed both proposals together, it should be pointed out that there are even greater problems with the second proposal than the first because the second proposal creates only a partial exemption from property taxation within the limited classification.
Under the circumstances, the inherent difficulties of the proposals prevent me from issuing an opinion which would conclude that the proposals are constitutionally sound and capable of withstanding a test of judicial scrutiny.
BCL:APH