FRED A. RISSER, Chairperson Senate Organization Committee
On behalf of the Senate Organization Committee you have asked whether section 70.325, Stats., offends the uniformity clause of the Wisconsin Constitution. The uniformity clause is part of article VIII, section 1 of the Wisconsin Constitution, and provides, so far as relevant to this opinion: "The rule of taxation shall be uniform . . . . Taxation of agricultural land and undeveloped land, both as defined by law, need not be uniform with the taxation of each other nor with the taxation of other real property."
Section 70.325 provides: "In determining the market value of lots in a recorded subdivision, the assessor shall take into consideration the time and expense necessary to market the lots."
Our supreme court was asked to construe the uniformity clause within one year of Wisconsin's becoming a state. In Knowlton v.Supervisors of Rock County, 9 Wis. 378 (*410), 389 (*420-21) (1859), the court held that uniformity meant equality, that:
 the course or mode of proceeding in levying or laying taxes shall be uniform; it shall in all cases be alike. The act of laying a tax on property consists of several distinct steps, such as the assessment or fixing of its value, the establishing of the rate, etc.; and in order to have the rule or course of proceeding uniform, each step taken must be uniform. The valuation must be uniform, the rate must be uniform.
The court restated the main principles of uniformity inGottlieb v. Milwaukee, 33 Wis.2d 408, 424, 147 N.W.2d 633
(1967):
 1. For direct taxation of property. under the uniformity rule there can be but one constitutional class.
 2. All within that class must be taxed on a basis of equality so far as practicable and all property taxed must bear its burden equally on an ad valorem
basis.
 3. All property not included in that class must be absolutely exempt from property taxation. *Page 129 
 4. Privilege taxes are not direct taxes on property and are not subject to the uniformity rule.
 5. While there can be no classification of property for different rules or rates of property taxation, the legislature can classify as between property that is to be taxed and that which is to be wholly exempt, and the test of such classification is reasonableness.
 6. There can be variations in the mechanics of property assessment or tax imposition so long as the resulting taxation shall be borne with as nearly as practicable equality on an ad valorem basis with other taxable property.
In Gottlieb, the court was considering the constitutionality of Wisconsin's urban redevelopment law. Under that law, local governing bodies were authorized to enter into contracts with persons who had formed redevelopment corporations. Those contracts required the erection of improvements according to an approved plan in exchange for the privilege of a partial tax freeze. The court noted that the Legislature considered it important that the property of the redevelopment corporation be given preferential treatment in order to encourage development in that area of the city found to be substandard. The court found that the law accomplished its intended purpose, the unequal taxation of property, but that such a purpose was constitutionally prohibited. The property of the redevelopment corporation was subject only to a portion of the property tax because its valuation was frozen at the value assessed just before its acquisition by the redevelopment corporation. The partial tax exemption was unconstitutional because the redevelopment corporation's property "[was] not subject to all of the tax that would fall on other property of equal current value." Gottlieb, 33 Wis.2d at 429.
Section 70.32 sets the basis for real estate assessments. In pertinent part it provides: "(I) Real property shall be valued by the assessor in the manner specified in the Wisconsin property assessment manual provided under s. 73.03(2a) from actual view or from the best information that the assessor can practicably obtain, at the full value which could ordinarily be obtainedtherefor at private sale." This provision consistently has been construed to mean that real property must be assessed at fair market value, that is, the amount it will sell for upon negotiations in the open market between an *Page 130 
owner willing but not obliged to sell and a buyer willing but not obliged to buy. Rosen v. Milwaukee, 72 Wis.2d 653, 661,242 N.W.2d 681 (1976).
Section 70.325 permits assessors to use their judgment in reducing the fair value that might otherwise be imposed on such lots. Hack and Sullivan, Taxation of Undeveloped Real Property inWisconsin, 47 Wis. Bar Bull. 37, 38 (1974). The statute's purpose is unequivocally stated in the 1955 Legislative Council Report, vol. IV: Subdivision and Platting of Land.
 One of the most frequently mentioned reasons for the evasion of the subdivision law is the increase in real estate tax assessment resulting from platting the land. If taxes are appreciably increased by the platting of the land, the subdivider may find himself faced with a substantial burden if his lots do not sell rapidly. Increased taxes are particularly burdensome to the subdivider because unlike other costs he may incur in establishing his subdivision — grading the streets or having his land surveyed and mapped — they do not increase the value of his investment. Their cost cannot be passed along to the purchaser; taxes are money down the drain.
The legislative council committee recommended the adoption of present section 70.325.
Unlike section 70.327 which requires assessors to take into consideration the time and expense necessary to replace or repair a contaminated well or water supply, or section 70.32(1g) and (1m) which requires the assessors to take into consideration the effect of zoning or environmental impairment on the value of the property, section 70.325 does not involve disadvantages or liabilities which affect the property's fair market value. SeeState ex rel. Wis. Edison Corp. v. Robertson, 99 Wis.2d 561,569, 299 N.W.2d 626 (Ct.App. 1980). Marketing costs may affect the fair market value of property. Unlike the liabilities or disadvantages referred to in the other statutes, however, the cost of marketing the lots does not automatically decrease the value of the lots.
Section 70.325 is a command to the assessor to reduce the fair market value of the land by an amount which takes into consideration the time and expense necessary to market the lots. That amount, however, has little to do with the land's fair market value, that is what a willing buyer will pay a willing seller. Presumably, the *Page 131 
seller's price reflects the time and expense necessary to market the lots; there is no reason to assume that a buyer, however, will be so accommodating as to pay what the seller is asking. More importantly, the seller's asking price which includes the expense of marketing the lots, and which presumably the seller thinks is a fair market price, should not be reduced by the amount necessary to market the lots. That amount is part of the land's value. Subtracting that amount from the land's value results in the same kind of partial tax exemption found unconstitutional in Gottlieb.
Section 70.325 applies only to "lots in a recorded subdivision." Sellers of lots not located in recorded subdivisions also incur time and expense marketing their lots. The statutes make no provision for deducting these costs from the lots' fair market value. Section 70.325 requires assessors to value lots in recorded subdivisions at something other than their full market value and thus creates an unconstitutional class.
It is suggested that the part of article VIII, section 1, which provides that the taxation of agricultural and undeveloped land need not be uniform with the taxation of other real property might supply a constitutional foundation for section 70.325. That might be the case if the real property referred to in section 70.325 met the constitutional requirement of "undeveloped land . . . as defined by law." The clause is not self-executing, however; before agricultural or undeveloped lands can be taxed at a different rate those terms must be defined by law. That has not been done.
The report of the joint survey committee on tax exemptions which accompanied 1973 Rule Joint Resolution 29, the second consideration of the constitutional amendment, states that the law "if fully implemented" would grant property tax relief for farmers and also preserve open spaces for recreational and other ecological uses. That report also urges the Legislature to implement the law cautiously to avoid great disparities in taxation. The committee's report confirms that agricultural and undeveloped lands can be taxed at different rates only after those terms are defined.
The provision for classification of agricultural and undeveloped lands was added to the constitution in 1974. Section 70.325 was enacted in 1955. Quite clearly, the authors of section 70.325 were not relying on the constitutional amendment for the statute's validity. *Page 132 
In my consideration of the constitutionality of section 70.325, I have indulged the presumption in favor of constitutionality, but that analysis leads me to conclude that the statute is unconstitutional beyond a reasonable doubt. Quinn v. Town ofDodgeville, 122 Wis.2d 570, 364 N.W.2d 149 (1985). I am also aware that the court of appeals has applied the statute, holding that the assessor should have taken into consideration the time and expense necessary to market subdivision lots. East Briar v.Rome Board of Review, 113 Wis.2d 33, 39, 334 N.W.2d 692 (Ct. App. 1983). In that case, the constitutionality of section 70.325 was not raised; the only question was whether the statute had been used. My analysis leads me to conclude that if presented with the issue, our courts would conclude that section 70.325 is unconstitutional.
DJH:AL *Page 133