STATE EX REL. LA FOLLETTE, Attorney General, Petitioner,
v. TORPHY, Secretary, Wisconsin Department of Administration, Respondent.

Supreme Court

*No. 77–860. Argued September 6, 1978.—Decided October 3, 1978.*
(Also reported in 270 N.W.2d 187.)

For the petitioner the cause was argued by *Allan P. Hubbard,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

For the respondent there was a brief by *Howard A. Sweet, Robert E. Chritton* and *La Follette, Sinykin, Anderson & Munson* of Madison, and oral argument by *Mr. Sweet.*

HANSEN, J. The enactments place the responsibility for the administration of the Improvements Tax Relief law with the Secretary of the Wisconsin Department of Revenue, Dennis J. Conta. In this capacity, he requested the Secretary of the Department of Administration, John Torphy, for an allotment of funds to administer the law.

Torphy refused to honor the request because he had been advised by counsel that the law was in violation of the uniformity of taxation clause of the Wisconsin Constitution (art. VIII, sec. 1) and the equal protection clauses of the Wisconsin Constitution (art. I, sec. 1) and the fourteenth amendment of the United States Constitution.

The Secretary of the Wisconsin Department of Revenue advised Bronson C. La Follette, Attorney General, State of Wisconsin, that an early resolution of the matter was necessary. The attorney general thereupon petitioned this court to take original jurisdiction. Leave was granted. The attorney general, as petitioner, commenced this action against John Torphy, Secretary of the Department of Administration, respondent. The parties have stipulated and agreed to the facts.

It is our conclusion that the enactments, sec. 79.24 and sec. 79.25, Stats., do not contravene the equal protection clauses of either the state or federal constitutions. We are of the further opinion that the enactments are violative of art. VIII, sec. 1, of the Wisconsin Constitution, the uniformity of taxation clause.

The law provides tax credits, within prescribed limitations, to certain property owners for building and garage improvements which result in increased property tax assessments. The statutes set forth the method of calculating the tax credit. The tax credit, thus computed, is paid to the owner of the real estate by the state from the general revenue fund.

The credit is available to only two classes of property owners, first, those who own a one or two-family dwelling which is the principal residence of the occupants and which has, together with the appurtenant land, a full valuation of $50,000 or less; and second, owners of rental units with three or more living units which are the principal residences of the occupants and which have a full valuation, including appurtenant land, of $75,000 or less. Both types of buildings must be at least ten years old as evidenced by the issuance of the original building permit or the entry of the property on the local tax roll.

A maximum of $3,000 in improvement assessments may be submitted for credit in any five-year period. The tax credit for a single improvement will be paid each

year for five years. If the ownership of the building is transferred for any reason other than the death of the owner within seven years of the granting of the tax credit the credit must be repaid with interest. Recovery is made by an assessment procedure similar to that for income tax assessments. The credit may be applied to any outstanding liability the owner has with the Wisconsin Department of Revenue.

## EQUAL PROTECTION.

The respondent argues that the Improvements Tax Relief law violates the equal protection clauses of both the federal and state constitutions. Several arguments are advanced which are intended to show that the classifications established by the statute are arbitrary and without rational basis.

We have often set forth standards for reviewing legislative classifications. These standards are:

" '(1) All classifications must be based upon substantial distinctions which make one class really different from another.

" '(2) The classifications adopted must be germane to the purpose of the law.

" '(3) The classifications must not be based upon existing circumstances only. They must not be so constituted as to preclude additions to the numbers included within a class.

" '(4) To whatever class a law may apply, it must apply equally to each member thereof.

" '(5) The characteristics of each class should be so far different from those of other classes as to reasonably suggest at least the propriety, having regard to the public good, of substantially different legislation.' . . ."[1]

[1] *Hortonville Ed. Asso. v. Joint Sch. Dist. No. 1*, 66 Wis.2d 469, 484, 225 N.W.2d 658 (1975); *Weiner v. J. C. Penney Co.*, 65 Wis.2d 139, 147, 222 N.W.2d 149 (1974); *State ex rel. Hammermill Paper Co. v. La Plante*, 58 Wis.2d 32, 75, 205 N.W.2d 784 (1973).

These standards are to be applied in light of the presumption of constitutionality:

" 'However, "[b]efore appellant can avail himself of these rules to challenge any distinctions" between legislative classifications, he "must overcome a presumption that the classifications are reasonable and proper."
" '. . .' " *Hammermill, supra,* at 75.

Also in the area of taxation it has frequently been held that a state legislature has wide discretion in making classifications. These classifications need only be reasonably related to the purposes of the legislation:

". . . We have long held that '[w]here taxation is concerned and no specific federal right, apart from equal protection, is imperiled, the States have large leeway in making classifications and drawing lines which in their judgment produce reasonable systems of taxation.' . . . A state tax law is not arbitrary although it 'discriminate[s] in favor of a certain class . . . if the discrimination is founded upon a reasonable distinction, or difference in state policy,' not in conflict with the Federal Constitution. . . ." *Kahn v. Shevin,* 416 U.S. 351, 355 (1974).

It is recognized that:

". . . the cardinal rule of statutory construction is to preserve a statute and to find it constitutional if it is at all possible to do so. We have recently said:
" '. . . the duty of this court is . . . if possible, to so construe the statute as to find it in harmony with accepted constitutional principles.' . . .
"All legislative acts are presumed constitutional, and every presumption must be indulged to sustain the law if at all possible. . . If any doubt exists it must be resolved in favor of the constitutionality of a statute. . . ." *Gottlieb v. Milwaukee,* 33 Wis.2d 408, 415, 147 N.W.2d 633 (1967).

The respondent contends that the statutory criteria for selecting those eligible for the credit do not neces-

sarily reach those owners in need of encouragement to improve their property. The respondent argues that the lines drawn by value and age of the property are arbitrary and result in a class that is underinclusive since it excludes some owners who need such encouragement and overinclusive since it includes some owners who would improve their property without the lure of a tax credit.

These two classifications rest on specific legislative findings:

"79.24 **Legislative purpose and findings . . . .**
"(2) FINDINGS. The legislature finds:
"(a) That residential property owners are often discouraged from making improvements to their property by the increases in property taxes which would result.
"(b) That this problem is particularly acute in relationship to older structures which do not exceed $50,000 in valuation, in the case of homes, or $75,000 in valuation, in the case of rental units."

This court has previously used a legislative finding to provide an adequate factual basis for a statutory classification. In *Hammermill, supra,* where the legislature had specifically found that the state's industry was being induced to leave the state, this court held that a statute which promoted industrial enterprise was not arbitrary or irrational:

" . . .
" ' "If there is any reasonable basis upon which the legislation may constitutionally rest, the court must assume that the legislature had such fact in mind and passed the act pursuant thereto. The court cannot try the legislature and reverse its decision as to the facts. All facts necessary to sustain the act must be taken as conclusively found by the legislature, if any such facts may be reasonably conceived in the mind of the court."
" ' . . .' " *Hammermill, supra,* at 46.

The legislative finding here that older buildings valued at less than the stated figures were particularly in need of improvement justifies the statutory value and age limits. Given such a legislative finding it cannot be said that these classifications are without a rational basis.

The other classification challenged by the respondent, the seven-year ownership requirement, is not similarly addressed in the legislative findings. Nonetheless, it cannot be said beyond a reasonable doubt that no set of facts could justify this classification. The legislature may have felt, not unreasonably, that owners who did not contemplate selling their buildings would be particularly hesitant to make improvements since they would be bearing the tax increase and would not be recouping their costs through a sale in the near future. The reason the legislature included this provision is irrelevant as long as the court cannot say that "no state of facts can reasonably be conceived that would sustain it." *Hammermill, supra,* at 74.

The respondent has presented hypothetical examples to demonstrate that inequalities exist in the legislative classification. As might be presumed, these examples tend to compare property of those owners who qualify under the statutory classification with those who do not. We would observe that some of the examples set forth are more properly addressed to the uniformity of taxation argument than to the contention of improper classification under the equal protection clauses. It is also contended that the inclusion of appurtenant land values in the valuation limit will disqualify many owners in the urban areas which the legislature found most in need of tax relief.

However, any line of demarcation necessarily involves some inequality, but, " '. . . [t]he test is not whether some inequality results from the classification, . . . but whether there exists any reasonable basis to justify the

classification. . . .' " *Hammermill, supra,* at 74. In discussing the 65-year old age limit established for eligibility in the homestead tax relief law this court said:

"We have previously held that in all legislative classifications there are always cases just within or just without the borderlines. Undoubtedly, in most classifications the line of demarcation fixed by the legislature is not the only one that could have been selected. Within the limits of what is reasonable it is for the legislature and not for the court to determine the exact point at which a classification is to operate. A beginning must be made somewhere, and it is a legislative function to determine it. If that determination is reasonable in accordance with the tests of classification that have been established judicially over the years, this court will not hold it invalid." *State ex rel. Harvey v. Morgan,* 30 Wis.2d 1, 9, 139 N.W.2d 585 (1966).

The respondent has not provided facts proving that the classifications drawn are without basis—that owners of buildings within the statutory class are without need of financial incentive to make improvements.

In all probability, some owners will not qualify under the statutory criteria who may need the encouragement the statute is designed to provide. However, this court has said:

". . . The mere fact that the legislature in the exercise of a proper police-power function has not seen fit to cure or attempt to alleviate all the evils . . . in a single piece of legislation does not render the classification used unreasonable." *Harvey, supra,* at 9.

Although the legislature may not have chosen the best and fairest way to deal with the combined problems of decaying urban areas and high property taxes, it cannot be said that the statutory classifications here are arbitrary and without rational basis. The Improvements Tax Relief law does not violate the equal protection clauses of either the state or federal constitutions.

## UNIFORMITY.

The respondent argues that this law violates the uniformity clause, art. VIII, sec. 1 of the Wisconsin Constitution, because it results in an unequal tax burden on taxpayers owning buildings of equal value. It is contended that the effect of the tax credit law is to give the owners of qualifying property a lower valuation for tax purposes than the owners of nonqualifying properties with equal fair market value. Therefore, it is argued, this credit constitutes a partial exemption of some real estate from full taxation.

The petitioner contends that since the uniformity clause applies only to the assessment and collection of direct taxes on real estate it cannot apply to the credit at issue here which is not a direct tax but only a distribution of tax proceeds; that since each owner first pays the full property tax assessed and only later receives a credit from the state's general revenues, the tax burden of this property owner is not affected; and that the instant law is comparable to the homestead relief law, sec. 71.09(7), Stats.

The initial question is whether the Improvements Tax Relief law is a tax statute subject to the uniformity clause.

In considering this question, we observe the legislature designated it as a tax statute in the language of the statute itself. The operative provisions of the relief provided are keyed to the characteristics of particular properties and not those of the taxpayer. Except for the actual writing of the rebate check and the source of the funds for such payments, its administration is an integral part of the property taxing process.

In *State ex rel. Harvey v. Morgan, supra,* this court held that the Homestead Tax Relief Act was a relief law in purpose and operation and was therefore not sub-

ject to the rule of uniformity. The court rested this conclusion on the following grounds. First, the stated purpose of the Act was to provide "relief" to certain persons. Second, the law provided relief even to renters who did not pay property taxes. Third, claimants who paid property taxes would pay them in full and receive a credit against their income taxes from the state's general fund. Fourth, the credit was tied to the individual's characteristics, those of shelter cost, age and income, and not to those of the property. Fifth, the administration of the law was tied to the income tax system and not to the property tax system.

Unlike the Act in *Harvey, supra*, the Act here under consideration is stated to be a "tax relief" statute which gives "tax credits" to "offset increased property taxes." The implementation of the Act is founded upon the characteristics of particular properties, not the characteristics of the individual owners. The Act is integrated to the property tax process through the involvement of the local taxing authority by requiring them to provide assessment figures necessary to calculate the credits.

The only grounds relied on in *Harvey, supra*, that are present here are the payment of property taxes in full to the local authority and the receipt of a rebate credit from the general revenues of the state. The persuasive individual relief aspects in the *Harvey Case, supra*, are absent in the present case. The statute here qualifies taxpayers for credit on the basis of the property's characteristics, value and age. No attempt is made to ascertain whether the particular taxpayer is in need of a tax credit. The taxpayer's financial situation is irrelevant since it is the property that qualifies for the credit.

The parties have stipulated that the legislature overrode the veto of Governor Lucey to the creation of sec. 79.25, Stats. Among other things the veto message di-

rected the legislature's attention to the fact that the law was "not integrated with other state aid programs . . ." including the homestead relief law and therefore, ". . . [i]t would be possible for an individual to receive a Homestead Credit for property taxes that were actually paid by the state. . . ."

The uniformity clause reads simply, ". . . [t]he rule of taxation shall be uniform. . . ." Wis. Const., art. VIII, sec. 1. This clause was initially applied in cases involving attempts to tax different types of property at different rates or to assess them at different fractions of value. *See, e.g., Knowlton v. Supervisors of Rock County,* 9 Wis. 378 (*410) (1859) ; *State ex rel. Baker Mfg. Co. v. Evansville,* 261 Wis. 599, 53 N.W.2d 795 (1952). These cases established the following rules:

"1. For direct taxation of property, under the uniformity rule there can be but one constitutional class.
"2. All within that class must be taxed on a basis of equality so far as practicable and all property taxed must bear its burden equally on an *ad valorem* basis.
"3. All property not included in that class must be absolutely exempt from property taxation.
"4. Privilege taxes are not direct taxes on property and are not subject to the uniformity rule.
"5. While there can be no classification of property for different rules or rates of property taxation, the legislature can classify as between property that is to be taxed and that which is to be wholly exempt, and the test of such classification is reasonableness.
"6. There can be variations in the mechanics of property assessment or tax imposition so long as the resulting taxation shall be borne with as nearly as practicable equality on an *ad valorem* basis with other taxable property." *Gottlieb v. Milwaukee, supra,* at 424.

Partial exemptions have consistently been held to be a violation of the uniformity clause. *Gottlieb, supra,* at 420.

We conclude the plan set forth in sec. 79.25, Stats., is, in fact, a tax statute. The remaining question is whether the statute provides a partial exemption. We are of the opinion it does provide such an exemption and is therefore in violation of art. VIII, sec. 1, of the Wisconsin Constitution.

The petitioner seems to suggest that the applicability of the uniformity clause ends with the assessment and collection of real estate taxes. This is not necessarily so. However, in *State ex rel. Van Dyke v. Cary*, 181 Wis. 564, 191 N.W. 546 (1923), the court applied this rule to sustain the return to Milwaukee county of only 25 percent of a teacher's retirement fund surtax paid by Milwaukee county taxpayers. In *Columbia County v. Wisconsin Retirement Fund*, 17 Wis.2d 310, 116 N.W.2d 142 (1962), the court sustained the payment of state funds, in lieu of direct aid to the counties, to the retirement fund accounts of those counties that had not made their full contribution. The authority cited in these cases for the proposition that the uniformity clause does not apply to the distribution of state aid involves the use of tax revenues to pay for government and public improvements. None of these cases involve direct distribution to individual taxpayers. The distinction is important to draw since distribution to individuals affects the individual's tax burden relative to other taxpayers, but distribution to counties and municipalities does not.

In *State ex rel. Bldg. Owners v. Adamany*, 64 Wis.2d 280, 219 N.W.2d 274 (1974), the court indicated that disbursements of tax funds may be subject to the rule of uniformity. In determining whether a statute which required landlords to pass property tax savings on to tenants was a tax statute, the court quoted the following definitions of taxes:

" 'Taxes are the enforced proportional contributions from persons and property, levied by the state by virtue of its sovereignty for the support of government and for all public needs.'

". . .

". . . A tax is an exaction, usually of money, by the government for the support of government." *State ex rel. Bldg. Owners v. Adamany, supra,* at 289,

then concluded:

"In the instant case, no funds are collected by the state, and *no funds are disbursed or used for the purposes of government as a consequence* of sec. 539. Whatever the nature of the exaction from a landlord here, it is not a tax in the sense that makes the uniformity clause relevant. . . ." (Emphasis added.) *Id.,* p. 289.

It is the effect of the statute, not the form, which determines whether it is a tax statute subject to the uniformity clause. Although the instant statute provides for the payment of the tax credit from the general revenues, it is in substance a tax statute because it has the effect of changing the individual tax burden by granting a partial exemption. Here the plan is predicated on the ownership of property and the assessment of improvements. The fact that a rebate credit is paid to certain property owners and not to others leads to the indisputable conclusion that taxpayers owning equally valuable property will ultimately be paying disproportionate amounts of real estate taxes. This is not uniformity.

The uniformity clause is intended to protect the citizen against unequal and unjust taxation. *Hammermill, supra,* at 71. The clause requires that taxation act alike on all persons similarly situated. Classification is permitted if it does not "effect an unequal burden upon the taxpayer." *Id.* at 72. In *Hammermill, supra,* the court sustained a statute which eliminated the tax lien against certain property even though it involved a step in en-

forcing the collection of taxes because the statute did "not affect the taxpayer's relative burden." *Id.* at 73.

Uniformity of burden is frequently emphasized:

". . . That object is equality; that equality relates to the burdens of state taxation, . . . In other words, there must be that uniformity, which is essential to equality, throughout each taxing jurisdiction, as to tax burdens imposed on property therein. . . .

". . . [W]e have shown that it has been the doctrine of this court, without serious disturbance, for some fifty years, that the constitutional requirement is not as to nonessentials, uniformity of methods of taxation, but uniformity in results, within the scope of the rule as stated." *Chicago & N. W. Railway Co. v. State,* 128 Wis. 553, 614, 615, 108 N.W. 557 (1906).

". . . It is very plain that the rule of uniformity mentioned in the constitution does not relate alone to the rate or percentage of taxation. It is equally obvious that the rule of uniformity may be as effectually abrogated by arbitrary exemptions from taxation as by arbitrary impositions of unequal amount. . . ." *Lawrence University v. Outagamie County,* 150 Wis. 244, 250, 136 N.W. 619 (1912).

This court looked beyond the form of a revenue disbursement and attacked the underlying partial exemption in *Ehrlich v. Racine,* 26 Wis.2d 352, 132 N.W.2d 489 (1965). *Ehrlich* invalidated a contract between the city of Racine and property owners who had granted a sewer easement to the city. Each year for ten years the city was to pay the owners an amount equal to any property tax paid in excess of that based on an agreed upon valuation. The owners were to pay the full property tax each year but were in effect given a rebate of all taxes attributable to development and improvement of the property. The court said:

"In examining the contract, and particularly paragraph B, we conclude that it provides for a partial exemption from taxes of the plaintiffs' land. To be sure, such tax

preference is accomplished by indirection; it requires the plaintiffs to pay the same assessment that other landowners pay, but under the provisions of this contract, the plaintiffs are subsequently entitled to what amounts to a rebate. We are unable to give judicial absolution to a two-stage tax differential which would be a constitutional transgression if done in one stage. . . ." *Ehrlich, supra,* at 356.

*Harvey, supra,* sustained the homestead relief law and distinguished *Ehrlich* on three grounds. First, the *Ehrlich* rebate resulted from a contractual, not a statutory, provision. Second, the payment in *Ehrlich* related directly to specific property and property taxes. Finally, the city had attempted to bargain away its power to tax. *Harvey, supra,* at 14, 15.

The payments at issue here do not result from a contractual relationship as in *Ehrlich, supra,* but they do relate to specific properties and property taxes. However, as in *Ehrlich,* it is the effect of the rebate credit that must be considered, not merely its form. In *Ehrlich* the court looked beyond the process of collection and assessment and decided that since the burden of taxation was unequal, even though the exemption was accomplished by a more sophisticated method, the exemption therefore contravened the uniformity clause.

*Gottlieb v. Milwaukee, supra,* sets forth a review of the cases in which this court has considered the application of the uniformity rule. In discussing the *Harvey Case, Gottlieb* stated:

"In 1966, in *State ex rel. Harvey v. Morgan* 30 Wis. (2d) 1, 139 N.W.(2d) 585, we pointed out that a rebate of income taxes, or a payment from the general fund as a relief measure for the assistance of the needy aged, did not violate the uniformity rule, since the scheme was in no way hinged upon the ownership or taxation of property. The clear implication of the case is that a payment that would constitute a rebate of property taxes would be a partial exemption and therefore void." *Id.* at 426.

*Gottlieb, supra,* dealt with a direct property tax exemption. The statute there provided that the local governing body could by ordinance exempt real property held by a redevelopment corporation from a portion of the property tax by freezing the assessed valuation at the level immediately prior to the corporation's acquisition of the property. In effect, the city would be releasing the taxpayer from any tax increases due to the improvements the corporation made. The court explained:

". . . [T]he property of the redevelopment corporation is given preferential treatment and bears less of its tax burden on the true *ad valorem* basis than does other property. This law accomplishes its intended, but constitutionally prohibited, purpose—the unequal taxation of property. Property taxes where such a freeze is in force are not uniform in their impact on property owners. Such lack of uniformity is accomplished by a prohibited partial exemption from taxation. . . ." *Id.* at 429.

The reasoning of *Gottlieb, supra,* applies with equal force here. This statute results in an unequal tax burden. The owners of homes with identical assessed valuations will bear an unequal tax burden even though they initially pay the same amount to the local taxing authority.

We do not consider it significant that the statute here does not provide for a direct exemption from the local assessment or does not appear as a credit on the assessment. Likewise, we do not see the fact that the rebate credit is paid from the state general revenues rather than the general revenues of city or county as a distinguishing factor.

Laudable as the declared purpose of the Improvements Tax Relief law may be, we cannot give judicial approval to the plan enacted for accomplishing the intended result.

*By the Court.*—The Improvements Tax Relief provisions of sec. 79.24 and 79.25, Stats., are declared un-

constitutional as violative of art. VIII, sec. 1, of the Wisconsin Constitution.

ABRAHAMSON, J., took no part.