In the Matter of the Special Assessments for Maintenance of & Improvements to State Street Mall—Capitol Concourse, City of Madison, Dane County, Wisconsin:

## GRACE EPISCOPAL CHURCH and Presbyterian Student Center Foundation, Appellants,

v.

## CITY OF MADISON, Respondent.†

Court of Appeals

*No. 85–0282. Submitted on briefs December 11, 1985.—
Decided February 6, 1986.*
(Also reported in 385 N.W.2d 200.)

† Petition to review denied.

For the appellants the cause was submitted on the briefs of *Kristine A. Euclide* and *Janice N. Bensky* and *Stafford, Rosenbaum, Rieser & Hansen* of Madison.

For the respondent the cause was submitted on the brief of *Henry A. Gempeler,* city attorney, and *James M. Voss,* assistant city attorney.

Before Gartzke, P.J., Dykman, J., and Bruce F. Beilfuss, Reserve Judge.

BEILFUSS, Reserve Judge. Grace Episcopal Church and Presbyterian Student Center Foundation appeal from a judgment upholding the City of Madison's levy of special charges for maintenance of the State Street Mall/Capitol Concourse. The appellants are religious institutions exempt from general property taxes under sec. 70.11(4), Stats., and they argue that the maintenance charge is a general property tax. They also argue that the maintenance charge does not satisfy the requirements for a special charge under sec. 66.60(16), Stats., and is arbitrary, unreasonable and discriminatory. We conclude that the city properly enacted the charge and that the appellants are subject to it, and therefore affirm the judgment.

The State Street Mall/Capitol Concourse was constructed as a special street and sidewalk improvement

in downtown Madison during the 1970's. To help defray the costs of construction, the city established an assessment district and assessed capital improvement costs against properties benefited by the construction. The appellants are located in the district and paid their assessments without protest.

The city originally paid all costs for maintenance of the new Mall/Concourse. Maintenance included lawn, tree and shrub care; snow removal from walks and crosswalks; trash clean-up and removal; and bus shelter and fixture maintenance. In 1981 the city created the State Street Mall/Capitol Concourse Maintenance District to assess a portion of these annual costs against property owners adjacent to or near the mall. The city pays two-thirds of the maintenance costs and allocates the remaining one-third as "special charges" to property owners including the appellants. The appellants commenced this action to challenge the city's levy.

The appellants first argue that the Mall/Concourse is a citywide improvement which must be supported by general property taxes. They argue that charges to maintain the improvement are therefore general property taxes that cannot be levied against their tax exempt property. We decline to consider the nature of the original Mall/Concourse improvement. That improvement is not at issue here. Adjacent property owners paid one-half of the original construction costs by special assessments. The appellants paid their assessments and did not contest the assessments' reasonableness or their special benefits from the project. Those arguments are now foreclosed. We will only consider the nature of the maintenance services rendered by the city and whether they fall

within the exception to general property taxes permitted by sec. 66.60(16), Stats.

Section 66.60(16), Stats., provides that "special charges for current services rendered may be imposed by the governing body by allocating all or part of the cost to the property served." Current services "include, without limitation because of enumeration, snow and ice removal, weed elimination, street sprinkling, oiling and tarring, repair of sidewalks or curb and gutter, garbage and refuse disposal, sewer service and tree care." *Id.* Most of the special maintenance services performed on properties in the Mall/Concourse area are specifically enumerated in sec. 66.60(16), including snow and ice removal, garbage disposal and tree care. Before construction of the Mall/Concourse, the appellants and other property owners in the area were responsible for this maintenance, and as the trial court noted, it would otherwise have to be done by appellants' custodial personnel. The appellants do not argue that the property owners' one-third share of annual maintenance costs does not reasonably correspond to services specifically enumerated in sec. 66.60(16). We conclude that special charges for one-third the cost of Mall/Concourse maintenance is appropriate under sec. 66.60(16) and not a hidden general property tax. As a special charge rather than property tax, the appellants' exemption under sec. 70.11(4), Stats., does not apply. *Yates v. City of Milwaukee,* 92 Wis. 352, 357–58, 66 N.W. 248, 249 (1896).

The appellants argue, however, that even if the cost of services enumerated in sec. 66.60(16), Stats., can be passed on to property owners, special charges cannot be made on a district basis. The appellants would limit sec. 66.60(16) to permit special charges for iso-

lated work directly provided to a particular owner's property. This argument requires the interpretation of sec. 66.60(16).

The meaning of a statute is a question of law which we decide independently of the trial court's conclusion. *State v. Denter,* 121 Wis.2d 118, 122, 357 N.W.2d 555, 557 (1984). The primary source of construction is the language of the statute itself. *Id.* at 123, 357 N.W.2d at 557. The rules of construction are used only to determine the meaning of an ambiguous statute. *State v. Tollefson,* 85 Wis.2d 162, 167, 270 N.W.2d 201, 203 (1978). That the parties disagree concerning a statute's meaning does not render it ambiguous. A statute is ambiguous only if reasonable persons could disagree as to its meaning. *Kollasch v. Adamany,* 104 Wis.2d 552, 561, 313 N.W.2d 47, 51–52 (1981). Whether reasonable persons could disagree is a question of law. *St. John Vianney Sch. v. Janesville Ed. Bd.,* 114 Wis.2d 140, 150, 336 N.W.2d 387, 391 (Ct.App. 1983).

Section 66.60(16), Stats., is not ambiguous. Although the statute must be strictly construed, *The Oshkosh City R. Co. v. Winnebago County,* 89 Wis. 435, 437, 61 N.W. 1107, 1107–08 (1895), nothing in sec. 66.60(16) indicates that it is limited as the appellants contend. Several of the enumerated services, such as street sprinkling, oiling and tarring, are unlikely to be performed on an isolated basis to individual property. Others, such as snow and ice removal, refuse disposal and tree care, can be reasonably performed on an area basis. We cannot conclude that the services rendered must be isolated. Nor can we conclude that the maintenance charge must be levied on an individual rather

than district basis. Because the maintenance can be performed on an area basis, it is only reasonable that the expense be divided among properties within the area served.

The appellants rely on the statute's reference to "the property served" to support their contention that charges cannot be imposed throughout a district. We disagree. A statute's reference to "property" includes the plural form "properties." Section 990.001(1), Stats. Consequently, all or part of the cost of current services may be imposed on the properties served. The city's maintenance district is composed of the properties served by the maintenance. The district approach to allocation is not improper.

The appellants also argue that their properties are not specially benefited by the Mall/Concourse maintenance. Special assessments under sec. 66.60, Stats., must satisfy two substantive requirements: (1) the assessment must be reasonable, and (2) the property assessed must be shown to derive special benefit from the assessment. *In re Installation of Storm Sewers,* 79 Wis.2d 279, 287, 255 N.W.2d 521, 525 (1977). The charges for the services provided here are not special assessments under sec. 66.60, but rather are special charges as provided for in sec. 66.60(16).

We conclude that the city need not show a property's special benefit before imposing special charges. The court in *In re Installation of Storm Sewers* relied on sec. 66.60(3)(d), Stats., in deriving the requirement of a special benefit. *In re Cherokee Park Plat,* 113 Wis.2d 112, 117, 334 N.W.2d 580, 583 (Ct.App. 1983). Subsection (3)(d) is one aspect of the report required by

sec. 66.60(2) and subsec. (2) is not applicable to proceedings under sec. 66.60(16). Section 66.60(16)(c). To comply with sec. 66.60(16), the municipality must establish that current services of the type described in the statute are rendered to the property or properties sought to be charged.

Lastly, the appellants argue that the charges are arbitrary and capricious because their religious properties are included with commercial properties in the district. The appellants have failed to show, however, the arrangement's arbitrariness. The appellants have not shown that commercial properties on the Mall/Concourse require greater maintenance than their properties. Both the appellants and the commercial property owners are being relieved of maintenance that they previously performed and which they would otherwise be responsible for. The joinder of appellant's properties and commercial properties is not unreasonable or arbitrary.

The appellants also contend that they are being arbitrarily charged to maintain a city park while other parks are maintained by the general tax levy. This is simply a repeat of their first argument that the Mall/Concourse is a citywide and not a local improvement, and the argument fails for the same reason. The Mall/Concourse, unlike the city parks referred to in their argument, was financed in part by a special assessment. The appellants had and passed up an opportunity to contest this assessment. The Mall/Concourse, therefore, is sufficiently distinct to merit special charges for its maintenance.

*By the Court.*—Judgment affirmed.

DYKMAN, J. *(dissenting)*. The majority does not address appellants' contention that a Mall-Concourse maintenance charge is a hidden general property tax, other than to conclude that it is not. Appellants agree that they are not challenging the assessment for the Mall-Concourse construction costs. Those costs play no part in this lawsuit, and cannot be the basis for the majority's avoidance of the maintenance charge issue. Appellants devote one-third of their brief to their contention that the Mall-Concourse charge is a hidden property tax. Were I writing for the majority, I would consider the issue, and conclude that the Mall-Concourse maintenance charge is a hidden general property tax.

This is not the first time an argument of this sort has been made.[1] Article VIII, sec. I of the Wisconsin Constitution provides: "The rule of taxation shall be uniform. . . ." This has been interpreted to mean a uniform rate of taxation and a uniform method of assessment. *Sigma Tau Gamma Fraternity House v. Menomonie,* 93 Wis.2d 392, 409–411, 288 N.W.2d 85, 93 (1980). However, a special assessment is not governed by the uniformity requirement of art. VIII, sec. I. *Plymouth v. Elsner,* 28 Wis.2d 102, 108, 135 N.W.2d 799, 802–03 (1965). "Thus the crucial issue is whether the tax imposed by the ordinance is a special assessment." *Id.*

Though the issue in this case is not uniformity of taxation, whether the tax is collectable from the appellants depends upon whether it is a special assessment or a general property tax. The cases arising under the

---

[1] In *Gottlieb v. Milwaukee,* 33 Wis.2d 408, 417, 147 N.W.2d 633, 638 (1967), the court noted that more than 40 cases had addressed this or a similar issue.

uniformity clause are therefore helpful in deciding this case.[2]

"It is the effect of the statute, not the form, which determines whether it is a tax statute subject to the uniformity clause." *State ex rel. La Follette v. Torphy,* 85 Wis.2d 94, 108, 270 N.W.2d 187, 192 (1978). A general test for deciding whether a tax is a general tax or a special assessment is found in *Duncan Develop. Corp. v. Crestview San. Dist.,* 22 Wis.2d 258, 264, 125 N.W.2d 617, 619–20 (1964):

> Public improvements are generally classified as general or local in character. A general improvement confers a substantially equal benefit and advantage on the property of the whole community or benefits the public at large. Such improvements are generally financed by general taxes which under the Wisconsin constitution, sec. 1, art. VIII, must comply with the rule of uniformity. A local improvement, although it may incidentally benefit all the property in the municipality and the public at large, is made primarily for the accommodation and convenience of inhabitants of a particular area in the community whose property receives a special benefit from the improvement either in the form of service or of enhancement of the value. Such improvements may be financed by special assessments

---

[2] Appellants have not challenged the maintenance charges as violative of the uniformity clause of the Wisconsin Constitution. I conclude that although the uniformity clause cases inquire as to the constitutionality of a municipal charge, the same analysis applies in this case because the legislative policy of providing religious and charitable exemption from property taxes should not be subverted by attaching a new name to a general property tax. A general property tax by any other name remains a general property tax.

against the property specially benefited in proportion to the benefits conferred and although being a species of taxation, such assessments are not limited by the rule of uniformity. [Citations omitted.]

The city argues that an inquiry into whether the Mall-Concourse maintenance charge is a special assessment or a general property tax ignores sec. 66.60(16)(a), Stats., which provides in pertinent part:

> (a)    In addition to all other methods provided by law, special charges for current services rendered may be imposed by the governing body by allocating all or part of the cost to the property served. Such may include, without limitation because of enumeration, snow and ice removal, weed elimination, street sprinkling, oiling and tarring, repair of sidewalks or curb and gutter, garbage and refuse disposal, sewer service and tree care.

This argument begs the question. Though sec. 66.60(16)(a) might permit any item to be defined as a special assessment, the question is not what an item is labeled, but what it is. *Duncan, supra.* We are still left with an inquiry into the *effect* of sec. 66.60(16)(a).

Several cases in addition to *Duncan* have considered whether a tax is a special assessment or a general tax. In *DePere v. Public Service Comm.*, 266 Wis. 319, 327, 63 N.W.2d 764, 769 (1954), the court concluded that a charge assessed for connection to a city water main, measured by front footage of the lot served, was neither a special assessment nor a general property tax. The court said:

> An assessment differs from a general tax, however, in that it is imposed to pay for an improvement which benefits a specific property within the political division imposing it. For that reason an assess-

ment is always made against the land in proportion as it enhances the value of that land, and it fixes a lien on the land. In the instant case, it was stipulated that the charge was not carried on the books of the city as a special assessment against specific property which abuts the main, the payment for which is proposed to be recouped. Neither is it shown in the record as a lien against the real estate.

In *Williams v. Madison,* 15 Wis.2d 430, 442–43, 113 N.W.2d 395, 401–02 (1962), the court considered whether operating and maintenance costs and bond interest and principal for a sewer district were special assessments or a general property tax. In concluding that those sums did not amount to a general property tax, the court said of the bond principal and interest: "While this element is not technically a special assessment, it is closely akin in nature to one." *Id.* at 443, 113 N.W.2d at 402. As to the operation and maintenance costs, the court said: "[These charges bear] little resemblance to a general property tax." *Id.* This definition was repeated, in part, in *Plymouth,* 28 Wis.2d at 108–09, 135 N.W.2d at 803. The court concluded:

While industrial sites may constitute public improvements, they do not benefit specific property in the city to a tangible extent which permits the levying of a special assessment measured in terms of the benefit conferred. Such sites confer no more tangible benefits to specific property than would a school or municipal swimming pool.

The "reality" test was again stressed in *La Follette,* 85 Wis.2d at 108, 270 N.W.2d at 192. The court examined a tax credit given for improvements to real estate:

It is the effect of the statute, not the form, which determines whether it is a tax statute subject to the

uniformity clause. Although the instant statute provides for the payment of the tax credit from the general revenues, it is in substance a tax statute because it has the effect of changing the individual tax burden by granting a partial exemption.

These cases do not offer a single test which will distinguish all special assessments from all general taxes. They suggest, however, a series of questions, the answers to which should distinguish the two in specific fact situations.

1. Does the charge benefit the public at large?

2. Is the charge proportioned on basis of benefit to land?

3. Does charge benefit specific property to a tangible extent?

4. Does the charge change or reallocate the individual tax burden?

In some respects, these questions are overlapping. However, they offer guidance in the difficult cases where the nature of a charge is uncertain. All should be answered keeping the *effect* of the statute in mind.

## BENEFIT TO PUBLIC AT LARGE

The Mall-Concourse is a large area affecting many people. The findings of the Subcommittee on Mall-Concourse Maintenance Assessments include its benefits:[3]

---

[3] The parties dispute the validity of relying on the work of this subcommittee. I conclude that because the subcommittee was specifically charged with recommending a method of allocating the Mall-Concourse maintenance costs to the City Council, and because

1. Direct benefits will accrue to properties situated within the recommended Special Assessment Benefit District.

2. Indirectly, all Madison residents will benefit from the project by the following:

    A. The project will be a source of civic pride.

    B. The project will result in an increased tax base downtown thus reducing the tax burden on the average home-owner.

    C. The project will attract national attention and bring new businesses to the City.

    D. The project will curb the trend toward economic and physical deterioration which now poses a threat to the central city.

3. The magnitude of the investment and the nature of the improvements demands the highest degree of maintenance.

4. Benefits to certain properties in Phase 3 of construction may be diminished if on-street parking is removed and is not replaced with off-street parking convenient to businesses in that construction phase.

5. That the people of the State of Wisconsin as a whole will benefit from the improvement to the Capitol Square since the Capitol is the focal point of our state government. The government therefore has an interest and an obligation to the aesthetic and economic future of the square. In addition, the

the Council adopted the subcommittee's recommendation, the work of the committee is a reliable record of what type of project the Mall-Concourse was at the time the subcommittee made its recommendation. An indication of the validity of the subcommittee's result is found in the diverse backgrounds of its members.

State Street has historically represented, and represents today, a natural tie between the State Capitol and the University of Wisconsin.

The subcommittee refers to the Mall-Concourse project as creating an "urban street park for the use and enjoyment of the general public in addition to creating an environmentally pleasing access to commercial establishments."

Except for one conclusion that direct benefits will accrue to properties within the district, the benefits discussed by the subcommittee's report are to the public at large.

## PROPORTIONAL CHARGE

The city's charge is proportional in that it directly relates the charge to the "effective area," which is expressed in square feet. However, the conclusion that an increase in square footage constitutes an increase in benefit to the land does not necessarily follow. This is for two reasons: In a large area such as the Mall-Concourse, the entire project is the attraction. The subcommittee spoke to this by referring to the Mall-Concourse as "the project" in describing its benefits. The record does not show or even suggest why one establishment benefits twice as much as another because its effective square footage is double that of the first. More importantly, the factors considered by the subcommittee were commercial factors. A witness for the city admitted that he could not recall the subcommittee discussing what benefits a church would receive. The subcommittee also used the original Mall-Concourse citizen advisory committee report which included the finding: "The degree to which an institution

345

such as a church will benefit from an improvement of this sort is more difficult to demonstrate than it is for a retail establishment." This is an admission that the benefits to appellants are *not* proportional.

I conclude that there is no basis for a determination that the charge is proportional on the basis of benefit to the land.

## BENEFIT TO SPECIFIC PROPERTY

The factor most important here is the method of computing the charge. Appellants pay a percentage of the total cost of aggregate Mall-Concourse maintenance. They therefore pay in part for work done far from them which necessarily differs in kind and amount from work done in the vicinity of their property. The situation is therefore much different from a situation such as road installation. Ordinarily, one front foot of a particular road is the same wherever installed. A front foot charge for a road reasonably relates to the specific property. Here, appellants are being asked to pay for some services performed far from their property. Such a scheme is normal for general property taxes, but far less usual for special assessments.

## REALLOCATION OF TAX BURDEN

There is no question but that the present system reallocates the tax burden of maintaining the Mall-Concourse. The usual "reallocation" case involves an attempt to permit a property to bear less of the tax burden. Reallocation is more easily understood in that context. Here, the parties agree that the Mall-Concourse

maintenance costs have been reallocated in part from all the city taxpayers to a few. I conclude that while reallocation is obvious, consideration of that factor here is suspect because even a mine-run special assessment reallocates the tax burden. I give this factor little weight.

Having considered the relevant factors, I conclude that the Mall-Concourse maintenance fee bears a far closer resemblance to a general property tax than a special assessment. The effect of the charge is to require appellants to pay for items which may be tangentially significant to them, but which benefit the public as a whole far more than appellants. Though termed a special assessment, the Mall-Concourse maintenance fee is really a general property tax. I would therefore reverse.