MARK D. BUGHER, Secretary, Department of Revenue
You have requested my opinion as to the constitutionality of a pending legislative proposal authorizing municipalities to impose service fees on certain categories of property exempt from general property taxes. To summarize the essential features of the proposed legislation, municipalities would have the discretion to impose these four classes of fees upon all classes of tax exempt property except those enumerated in the statute. The fee would be based on the value of the services that are provided to the property in question. You point out that Governor Thompson vetoed a similar proposal in the last executive budget bill. Pursuant to the Governor's veto message, your department prepared a report, entitled "Fee on Exempt Property for Municipal Services," studying the fee concept. The Legislature's joint survey committee on tax exemptions has also prepared a report in connection with 1989 Assembly Bill 39, the current embodiment of the municipal service fee concept.[1]
Both your department's report and the joint survey committee's report raise questions about the proposal's compliance with article VIII, section 1 of the Wisconsin Constitution (the "Uniformity Clause"). In addition, your department's report raises concerns *Page 65 
regarding the proposal's constitutionality under equal protection principles.[2]
 CONSTITUTIONAL CONCERNS
You have identified three features of the proposed legislation which raise constitutional doubts:
 1) the fee would be imposed on exempt property only, and exclude taxable property, suggesting that the fee or service charge is actually a tax, and as a tax it is in violation of the uniformity clause;
 2) municipalities could elect to impose the fee, and it would not have to be imposed on all categories of exempt property, suggesting a denial of equal protection; and
 3) the fee as implemented would reflect costs of some services such as fire and police protection which do not benefit the exempt property directly and exclusively, further suggesting that the fee is actually a tax.
I am concerned, as are you, about the possibility that the courts would find the proposed service fee to constitute a property tax notwithstanding a contrary characterization in the act itself. I also am concerned that the courts would find a uniformity clause problem. Moreover, it is quite possible that they would find an equal protection problem based on the classifications created in the statute and, where not created in the statute, invited to be made by participating municipalities. I will discuss both issues.
RULES OF CONSTRUCTION
It should be understood that any challenger would be faced with the presumption of constitutionality which all legislative enactments enjoy. State ex rel. La Follette v. Torphy, 85 Wis.2d 94,100, 270 N.W.2d 187 (1978). In the area of taxation, the *Page 66 
Legislature has wide discretion in making classifications. It is presumed that such classifications are reasonable and proper. Disparate treatment of certain classes of taxpayers is permissible if there is a reasonable basis for that treatment. State ex rel.La Follette, 85 Wis.2d at 100. If there is any reasonable basis upon which legislation may constitutionally rest, the courts will assume that the Legislature had such facts in mind when it passed the act. State ex rel. Hammermill Paper Co. v. La Plante,58 Wis.2d 32, 46-47, 205 N.W.2d 784 (1973).
UNIFORMITY CLAUSE ISSUES
You are concerned that the proposed municipal service fee would be construed as a property tax — because it would be imposed on tax-exempt property only and because it would reflect the cost of some services which cannot benefit the exempt property directly and exclusively — and thus be deemed to run afoul of the uniformity clause.
Article VIII, section 1 of the Wisconsin Constitution (the Uniformity Clause) provides: "The rule of taxation shall be uniform. . . ." Under the rule of uniformity, for the direct taxation of property there can be but one constitutional class. All property within that class must be taxed on an equal basis, so far as practicable, and all property tax must bear its burden equally and on an ad valorem basis. Any property not included in that class must be absolutely exempt from the property tax. Gottliebv. Milwaukee, 33 Wis.2d 408, 424, 147 N.W.2d 633 (1967).
The Uniformity Clause only applies to property taxes. Jordanv. Menomonee Falls, 28 Wis.2d 608, 622, 137 N.W.2d 442
(1965); accord Barnes v. West Allis, 275 Wis. 31, 37,81 N.W.2d 75 (1957) (an excise tax is not subject to the Uniformity Clause);Plymouth v. Elsner, 28 Wis.2d 102, 108, 135 N.W.2d 799
(1965).
It is the effect of a statute, not its form, which determines whether or not the statute is a tax statute subject to uniformity.State ex rel. La Follette, 85 Wis.2d at 108. Thus, the fact that the Legislature refers to the exaction as a fee is not dispositive. *Page 67 
If the fee in question is determined to be a property tax, it may well run afoul of the rule of uniformity. If, however, the fee is a special assessment, it is not subject to the uniformity clause, and the statute could be upheld. With this in mind, I examine whether the fee created by proposed section 70.118 is a property tax or a special assessment.
The definition of a tax is a simple one. Taxes are "the enforced proportional contributions from persons and property, levied by the state by virtue of its sovereignty for the support of government and for all public needs." State ex rel. La Follette,85 Wis.2d at 108. In determining whether or not a statute created a property tax, the court in State ex rel. La Follette considered whether or not the operative provisions of the statute were keyed to characteristics of particular property or of the taxpayer; the Legislature's characterization of the exaction and whether administration of the statute in question was part of the property taxing process. State ex rel. La Follette, 85 Wis.2d at 104.
With respect to the first factor, the proposed legislation is keyed to the characteristics of property, not of the taxpayer. The fee is imposed "on . . . property exempted from taxation." Section 1 of Assembly Substitute Amendment 2, 1989 A.B. 39, sec. 70.118 (1)(a), Stats. From this perspective, the fee resembles a property tax. However, consideration of the other two factors militates against the finding that this is a property tax. The Legislature does not consider it a tax, but rather has characterized it as a fee. Moreover, in no way is the administration of the municipal service fee a part of the property taxing process. Unfortunately, certain other factors of the proposed legislation point toward its characterization as a tax, and not a fee.
It seems obvious that the municipal service fee is deemed by the Legislature to be a substitute for the general property tax for certain classes of now tax-exempt property. With respect to the classes of services mentioned in the bill, e.g., police and fire protection and garbage collection and disposal, owners of taxable property pay for these municipal services through the property *Page 68 
tax. The effect of the municipal service fee proposal would be that certain owners of tax-exempt property, who receive the same municipal services as taxable property owners, would pay for some of those in the form of a "fee," instead of a tax. Owners of tax-exempt property subject to the municipal service fee would, then, in effect enjoy only a partial tax exemption, a violation of the Uniformity Clause.
In State ex rel. La Follette, the court struck down a statute providing property tax credits for certain improvements. The court stated: "The fact that a rebate credit is paid to certain property owners and not to others leads to the indisputable conclusion that taxpayers owning equally valuable property will ultimately be paying disproportionate amounts of real estate taxes. This is not uniformity." State ex rel. La Follette,85 Wis.2d at 108. The same could be said about the municipal service "fee." Taxpayers owning equally valuable property would be paying disproportionate amounts of real estate taxes depending upon whether they were also subject to the municipal service fee. The courts could find that the municipal service fee is in fact a disguised property tax exacted, not a bona fide way of recouping the costs of providing municipal services.[3]
The municipal service fee is not a special assessment within the traditional meaning of that term. The special assessment process is a system of special taxation for municipal improvements based upon "supposed special benefits" to particular property. Weeks v. The City of Milwaukee and others,10 Wis. 186 [*242], 203 [*260] (1860). The municipal service *Page 69 
fee may be used for street construction. Section 1 of Assembly Substitute Amendment 2, 1989 A.B. 39, sec. 70.118 (2)(c), Stats. But that is the only improvement subject to the fee. The rest of the uses are for ongoing municipal services. For this reason, I do not believe that a municipal service fee would be considered a special assessment within the constitutional rule of Weeks, exempting special assessments from the uniformity clause.
Significantly, the statutes already contain authorization for municipalities to impose special assessments. Sec. 66.60 (1)(a), Stats. Such assessments are for "special benefits conferred upon . . . property by any municipal work or improvement." It certainly would seem that the Legislature does not consider municipal service fees to be special assessments. If it did, it presumably would have called them special assessments and, perhaps, placed them in section 66.60 and within a number of other statutes relating to the imposition and enforcement of special assessments.
In De Pere v. Public Service Comm., 266 Wis. 319, 326-27,63 N.W.2d 764 (1954), the court held that a municipal charge for the water utility was not a special assessment because, among other reasons, it was not imposed under the assessment statute.[4]
Thus, it is highly significant that the Legislature has not created the municipal service fee as a special assessment. Other factors militate against the courts' finding that the municipal service fee is a special assessment. Special assessments are for "property in a limited and determinable area." Sec. 66.60 (1)(a), Stats. For an assessment to be a valid special assessment, it must provide "tangible" benefits to specific property. Plymouth,28 Wis.2d at 108-09. Property subject to the assessment must derive special benefits. Grace Episcopal v. Madison, 129 Wis.2d 331, 337, *Page 70 385 N.W.2d 200 (Ct.App. 1986). The court of appeals has stated that a special benefit means an "uncommon advantage." Matter of:Goodger v. City of Delavan, 134 Wis.2d 348, 352,396 N.W.2d 778 (Ct.App. 1986). Such an uncommon advantage is in addition to that benefit enjoyed by other property owners in the municipality. Matter of: Goodger, 134 Wis.2d at 352. The court relied on Petkus v. State Highway Comm., 24 Wis.2d 643, 648,130 N.W.2d 253 (1964), which stated that: "Special benefits are distinguished from general benefits in that they differ in kindrather than in degree from those which accrue to the publicgenerally." (Emphasis added.)
It has been stated generally that all property benefiting from a particular municipal improvement must be subject to the special assessment. 14 McQuillan Municipal Corporations § 38.05 (3d ed. 1987). All property within a municipality is benefited by, for example, police and fire protection. Yet, under the proposed legislation, only certain classes of tax-exempt property would be subject to the assessment. This would seem to violate the just-stated rule of law and militates against a finding that the municipal service fee is a special assessment.
In Barber v. Commissioner of Revenue, 674 S.W.2d 18, 21
(Ky.Ct.App. 1984), the court invalidated a "service charge" for fire protection. The court held that the charge was not a special assessment because there was no improvement; rather, the services provided were recurring. The court also concluded that the costs of the service should be shared "equally and equitably by all in the community who own property." Since the charge was not imposed on everyone, the court found the charge inequitable.[5] *Page 71 
In Emerson College v. City of Boston, 391 Mass. 415,462 N.E.2d 1098, 1107 (1984), the city of Boston's charge for "augmented fire service availability" was struck down as not resembling "any constitutionally permissible form of monetary exaction." The court was highly critical of the fee because services provided benefited property other than that which was subject to the fee. Emerson College, 462 N.E.2d at 1106. This case, like the Kentucky case, would be authority against the permissibility of the municipal service fee.
There is contrary authority on this issue. In Charlotte Countyv. Fiske, 350 So.2d 578, 580 (Fla.Dist.Ct.App. 1977), the court analogized a fee for residential garbage pickup as a special assessment. The court defined "improvement" as including the "furnishing of or making available a vital service, e.g., fire protection or . . . garbage disposal." In defense of the municipal service fee proposal, one would, then, argue that the fee is in the nature of a special assessment and urge the broad definition of special assessment upon the court.
With all of this in mind, in my opinion, the courts would almost certainly hold that the property subject to the municipal service fee is not specially benefited and does not receive an uncommon advantage by reason of the services provided. After all, police and fire protection, etc., are services provided to all property within the municipality, not just those "assessed." There is no benefit to tax exempt property that is not already enjoyed by other property owners in the municipality. Nor do the services provided differ in kind (even if for the purpose of argument, they were deemed to differ in degree) from the services provided to the public generally. The municipal service fee, thus, does not resemble special assessments in this important respect.
The courts very likely would find that general, rather than special, benefits are provided by the municipalities with respect to the services for which the municipal service fees may be imposed. General improvements confer "substantially equal benefit and advantage" on the property of the whole community *Page 72 
or benefits to the public at large. Local (or special) improvements are made primarily for the accommodation and convenience of "inhabitants of a particular area" whose property receives a special benefit. With respect to general benefits or improvements, the costs must comply with the rule of uniformity. Special benefits or improvements may be financed with assessments "in proportion to the benefits conferred." Duncan Develop. Corp. v.Crestview San. Dist., 22 Wis.2d 258, 264, 125 N.W.2d 617
(1964). The municipal service fee, being an exaction to pay for municipal services generally available to the public at large, more closely resembles a tax than a special assessment and therefore could be deemed to require compliance with the uniformity clause.
In summary, the municipal service fee proposal is a novel one, shifting to some degree the cost of certain traditional municipal services provided to all property from the general property taxpayer to the tax-exempt property owner. This would result in a situation whereunder certain property owners pay for the services by one method, the property tax, and other property owners pay for the services in another way, the municipal service fee. This raises a serious Uniformity Clause question.
EQUAL PROTECTION PROBLEMS
Perhaps even more serious than the Uniformity Clause issue is the issue of whether or not the municipal service fee proposal would violate the equal protection requirements of the state and federal constitutions. On this point, I believe that there is a greater possibility that the courts would invalidate the proposal than on uniformity grounds.
As noted at the outset of this opinion, all statutory classifications are subject to equal protection principles. Classifications must be based upon substantial distinctions which make one class really different from another. See State ex rel.La Follette, 85 Wis.2d at 99. The municipal service fee proposal would create at least four classes of property owners: (1) the general property taxpayer whose municipal services are financed *Page 73 
in that fashion; (2) the tax-exempt property owner who would be asked to pay for certain municipal services through the municipal service fee, as opposed to the property tax; (3) the tax-exempt property owner who would continue not to be asked to finance any municipal services, e.g., churches and other religious associations; and (4) the group of tax-exempt property owners who are asked to pay for some but not all of the municipal service fees imposed pursuant to the proposed legislation.
The statute offers no standards or other guidance to municipalities in determining which services would be financed by the municipal service fee or by whom. It also offers no standards or other guidance to suggest under what circumstances it is appropriate to finance a certain service by the property tax versus the municipal service fee. For these reasons, the classifications seem suspect.
In Rubin v. City of Wauwatosa, 116 Wis.2d 305,342 N.W.2d 451 (Ct.App. 1983), the court considered an equal protection challenge to the city of Wauwatosa's fee for collecting residential refuse. The court upheld the fee finding a substantial basis for distinguishing between commercial and residential garbage.Rubin, 116 Wis.2d at 320-21. It is harder to imagine a basis for distinguishing between those property owners who would finance certain municipal services via the general property tax from those who would finance certain municipal services via the municipal service fee. The only proposed statutory basis for such a distinction is that the Legislature has already determined that certain property should be tax exempt. It is also difficult to conceive of a rational basis upon which to determine that certain services will continue to be provided free of charge to tax-exempt property owners while other services will not. These classifications affect the taxable property owner as well as the tax-exempt property owner in that the total burden of financing certain municipal services will be reallocated. *Page 74 
 CONCLUSION
The municipal service fee proposal likely would be found by the courts to violate the uniformity and equal protection clauses of the Wisconsin Constitution.
DJH:ESM
[1] Actually, 1989 A.B. 39 has been supplanted by Assembly Substitute Amendment 2 to 1989 A.B. 39 (the "Assembly Bill").
[2] These documents will be part of the Assembly Bill's legislative history, and, thus, scrutinized by the courts if called upon to review the proposal, should the proposal be enacted into law.
[3] If it were, why are the owners of taxable property exempt, in effect, from the municipal service fee?
[4] The court was also influenced by the fact that the municipal charge did not become a lien on the property. De Pere, 266 Wis. at 326-27. Like the charge in De Pere, there is no provision for the municipal service fee imposed by the proposed legislation to become a lien upon any property.
[5] The precedential value of this case is limited by the fact that the service charge at issue was found to have no statutory authority. The municipal service fee proposed for Wisconsin, obviously, is a legislative initiative. *Page 75