Honorable Bobby L. Hogue The Speaker, Arkansas House of Representatives State Capitol, Room 350 Little Rock, Arkansas 72201-1089
Dear Mr. Speaker:
This is in response to your request for an opinion on the constitutionality of House Bill 1007. Specifically, you have asked my opinion on the following:
 House Bill 1007 sets up a procedure for property taxes to be paid to the state, then having those same dollars go back to taxpayers in the form of a rebate on their property taxes.
 Amendment 1 provides for a uniform property tax of 25 mills to be used for M O purposes to be paid to the state and redistributed to the school districts. It does not provide for any exceptions, exemptions or rebates of these same dollars.
 As a result of Amendment 1, would H.B. 1007, if passed by the General Assembly as currently written, be unconstitutional?
It is my opinion that H.B. 1007 in all likelihood violates the spirit, if not the letter, of Amendment 1,[1] and that it is constitutionally suspect under at least two other provisions of the Arkansas Constitution.
It is necessary, initially, to clarify the actual content of H.B. 1007 relative to the questions you have posed above. The bill is entitled: "AN ACT TO LEVY AN ADDITIONAL 1% SALES AND USE TAX TO BE USED TO PROVIDE A PROPERTY TAX REBATE NOT TO EXCEED $5,000 PER TAXPAYER PER YEAR; AND FOR OTHER PURPOSES."
The additional one percent state sales and use tax which is proposed to be levied under the bill would create a pool of state money to be used to fund the "rebates." The actual school property taxes paid by taxpayers to the counties and distributed to the school districts (and to the state under Amendment 1) would still be levied and collected, and would be remitted to the intended recipients (the school districts and the state). House Bill 1007 would simply create a separate pool of money, by virtue of an increase in the state sales tax, to rebate the exact amount of school real property taxes paid by each taxpayer to support maintenance and operation of their district, up to $5,000.
You have asked whether this bill violates the provisions of Amendment 1, recently passed by the voters at the November 1996 general election. That Amendment imposes a uniform minimum property tax rate in each school district of twenty-five mills. The revenues from that amount of millage is remitted to the State Treasurer for redistribution to all school districts "as provided by law," to help achieve an equalization of funding across the various school districts in the state. School districts may levy additional millage, over and above the twenty-five mill minimum, which is remitted by the collecting county to the school district for its use in defraying the expenses of the district.
The provisions of H.B. 1007 do not technically impede or disturb any action required to be taken under Amendment 1. The uniform minimum millage is still collected from the taxpayers and remitted to the State Treasurer for redistribution as contemplated in the Amendment. The school districts may also continue to collect additional millage over the minimum amount and will receive these funds to support the district. The school districts will receive the exact same amount of real property tax dollars if H.B. 1007 becomes law. The effect of the bill is to rebate a portion[2] of the taxes paid from a separate state, as opposed to local, funding source. The actual operation of Amendment 1 is therefore not disturbed by H.B. 1007. The overall effect of the bill, however, is to shift the burden of supporting public school maintenance and operation from those who pay real property taxes to those who pay personal property taxes and sales taxes. It can be forcefully argued, in my opinion, that this effect violates the people's expressed intention to fund such school expenses through the levy of real property taxes under Amendment 1. As noted by the Arkansas Supreme Court, the legislature is forbidden from doing indirectly that which it is prohibited from doing directly. See,e.g., Simpson v. Teftler, 176 Ark. 1093, 5 S.W.2d 350 (1928). The legislature is without power to abolish the uniform minimum tax millage imposed by Amendment 1 or any other local millage voted by the electors of a school district. In my opinion, an attempt to negate the impact of these taxes through a rebate process, as in H.B. 1007, might be challenged as an unconstitutional attempt to undermine Amendment 1.
In my opinion, however, H.B. 1007 suffers from more severe constitutional infirmities than those occasioned by Amendment 1. The courts of more than one state have held that similar legislation creates an implicit, unconstitutional and unauthorized "exemption" from property taxation. The Arkansas Constitution specifically enumerates the property which may be exempted from taxation. See Arkansas Constitution, art. 16, § 5. "All laws exempting property from taxation other than as provided in [the] Constitution shall be void." Arkansas Constitution, art. 16, § 6. Although H.B. 1007 is not an express exemption from taxation (the property taxes will still be paid, but rebated from a separate source), the courts in other states have found similar schemes unconstitutional.See, e.g., State ex rel. La Follette v. Torphy, 85 Wis.2d 94,270 N.W.2d 187 (1978) (home improvement tax relief act was an unconstitutional implicit tax exemption despite the fact that payments came from separate state funds); State v. Armstrong, 17 Utah 166,53 P. 981 (1898) (rebate of property taxes was unconstitutional because it was tantamount to granting a prohibited exemption from property taxes); and City of Jackson v. Pittman, 484 So.2d 998
(Miss. 1986) (municipal ad valorem property tax rebate to elderly and disabled was an unauthorized exemption of property from taxation).See also generally, Attorney General Opinions, Tennessee, Nos. 96-133; 86-169, and 80-94. But see, Baker v. Matheson,607 P.2d 233 (Utah 1979) (statute authorizing homeowners and renters to file claims for refunds of state general fund free revenue was not an unauthorized exemption from taxation, as it was not inextricably linked to the payment of property taxes, or a rebate, and payments were made from separate state funds, distinguishing Armstrong, supra. See also,however, Maughan, J. dissenting, calling the Baker majority opinion an "astonishing performance," and highlighting the indirect violation of constitutional provisions). Cf. also State ex rel. Norwood v. N.Y.L.Insurance Company, 119 Ark. 314, 171 S.W. 871 (1914) (holding the revamping of insurance taxes not an implicit tax exemption).
The primary case above which upheld a refund plan as against a challenge that it was an unauthorized tax exemption did so on the basis that it was a "relief statute" rather than a property tax "rebate." See Baker,supra. This case may be distinguished from the facts surrounding House Bill 1007, in which the legislature itself refers to the measure as a "rebate."
In addition to the infirmities existing under the provisions above, the Arkansas Constitution provides, at article 5, § 33 and article 12, § 12, respectively, that:
 No obligation or liability of any railroad or other corporation held or owned by this State shall ever be exchanged, transferred, remitted, postponed or in any way diminished by the General Assembly; nor shall such liability or obligation be released except by payment thereof into the State Treasury. [Emphasis added.]
* * *
 Except as herein otherwise provided, the state shall never assume or pay the debt or liability of any county, town, city, or other corporation whatever, or any part thereof, unless such debt or liability shall have been created to repel invasion, suppress insurrection or to provide for the public welfare and defense. Nor shall the indebtedness of any corporation to the state ever be released or in any manner discharged save by payment into the public treasury.
[Emphasis added.]
It has been held that a matured tax claim is an indebtedness within the meaning of the latter section. See Federal Express Corporation v.Skelton, 265 Ark. 187, 578 S.W.2d 1 (1979). At least one court has held a property tax rebate plan unconstitutional under a similar provision. SeeJackson v. Pittman, supra. To the extent H.B. 1007 rebates corporate property taxes, this provision may be violated.
In addition, a court in at least one state has held a similar plan unconstitutional under a state constitutional requirement (such as Arkansas Constitution, art. 16, § 5), that property taxes be "equal and uniform" throughout the state. See La Follette, supra. But see State exrel. Harvey v. Morgan, 30 Wis.2d 1, 139 N.W.2d 585 (1966) (statute providing for relief of persons over sixty-five through system of income tax credits and refunds, was a relief measure and not subject to the rule of uniformity of taxation); and McManus v. Wisconsin Department ofRevenue, 155 Wis.2d 450, 455 N.W.2d 906 (1990) (farmland credit based upon environmental restrictions on use of land was a relief statute and not a tax statute, and was not subject to equality and uniformity).
In sum, in my opinion, H.B. 1007 in all likelihood offends the purpose of Amendment 1, and is constitutionally suspect under a number of other constitutional provisions.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elana C. Wills.
Sincerely,
WINSTON BRYANT Attorney General
WB:ECW/cyh
[1] "Amendment 1" was adopted by the voters at the general election in November of 1996. It has not yet been numbered by the Arkansas Code Revision Commission and included in the Arkansas Code.
[2] The bill only seeks to rebate real property taxes paid to supportmaintenance and operation, and does not rebate taxes paid on personal property, or taxes levied, collected, and used to support capital improvements or bonded indebtedness.